ROB BONTA
Attorney General of California
NELI PALMA, State Bar No. 203374
Senior Assistant Attorney General
NATALIE S. TORRES, State Bar No. 283571
Supervising Deputy Attorney General
LESYA N. KINNAMON, State Bar No. 296902
DAVID C. GOODWIN, State Bar No. 283322
TAYLOR ANN WHITTEMORE, State Bar No. 320343
Deputy Attorneys General
 1300 I Street, Suite 125
 Sacramento, CA 95814
 Telephone:  (916) 210-6093
 Fax:  (916) 327-2319
 E-mail:  Lesya.Kinnamon@doj.ca.gov
*Attorneys for Plaintiff State of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| **THE PEOPLE OF THE STATE OF CALIFORNIA,**<br><br>Plaintiff,<br><br>v.<br><br>**EJUICESTEALS.COM, REMON HANNA in his official capacity as Chief Executive Officer, Chief Financial Officer,**<br><br>Defendants. | 1:23-CV-01726-KES-CDB<br><br>**PLAINTIFF THE PEOPLE OF THE STATE OF CALIFORNIA'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Date:          October 20, 2025<br>Time:          9:00 a.m.<br>Courtroom:  6<br>Judge:        Hon. Kirk E. Sherriff<br>Trial Date:   N/A<br>Action Filed: 12/14/2023 |

# TABLE OF CONTENTS

**Page**

Introduction ............................................................................................................... 1

Background and Claims ............................................................................................. 1

Legal Standard .......................................................................................................... 1

Summary of Facts  ..................................................................................................... 2

Argument ................................................................................................................... 5

I.     Defendants' Business Was Unlawful Because They Failed to Hold
       Required Tobacco Licenses .................................................................... 5

II.    Defendants' Business Was Unlawful Because They Failed to Timely File
       CECET Returns, Remit CECET Tax, and Provide CECET Collection
       Disclosure............................................................................................... 8

III.   Defendants' Business Was Unlawful Because They Shipped and Delivered
       Tobacco Products Through the United States Postal Service ............... 10

IV.    Defendants Made Unlawful Shipments of Tobacco Products in Containers
       Without the Required Labels ................................................................ 10

V.     Defendants' Business Was Unlawful Because They Failed to Comply with
       Package Shipment and Age Verification Requirements ....................... 11

VI.    Defendants' Business Was Unlawful Because They Failed to Verify the
       Age of California Purchasers as Required by State Law ...................... 12

VII.   Defendants' Business Was Unlawful Because They Sold Tobacco Products
       to Underage California Customers........................................................ 14

VIII.  Defendants' Business Was Unlawful Because They Delivered Unapproved
       Tobacco Products in Violation of the PACT Act.................................. 15

IX.    Defendants Engaged in Unfair Competition Through Their Unlawful
       Business Acts and Practices .................................................................. 17

X.     Civil Monetary Penalties and Permanent Injunction .......................... 19

       A.    Civil Monetary Penalties............................................................ 19

             1.    Civil monetary penalty under California Revenue and
                   Taxation Code  § 30101.7(g) .......................................... 19

             2.    Civil monetary Penalty Under California Business and
                   Professions Code  § 22963(f)........................................... 20

             3.    Civil monetary penalty under California Business and
                   Professions Code  § 17206............................................... 22

       B.    Permanent Injunction ................................................................. 24

             1.    Permanent injunction prohibiting PACT Act violations.............. 25

Conclusion ............................................................................................................... 27

i

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242 (1986) ................................................................................................................ 2

*Beaver v. Tarsadia Hotels*
816 F.3d 1170 (9th Cir. 2016) ............................................................................................... 17

*Campos v. Dyck O'Neal, Inc.*
No. 2:24-CV-01317-KJM-DB, 2024 WL 2941656 (E.D. Cal. May 10, 2024) ............... 17, 18

*Celotex Corp. v. Catrett*
477 U.S. 317 (1986) ................................................................................................................ 2

*Commodity Futures Trading Comm'n v. Co Petro Mktg. Grp., Inc.*
502 F. Supp. 806 (C.D. Cal. 1980) ....................................................................................... 25

*F.T.C. v. Affordable Media*
179 F.3d 1228 ....................................................................................................................... 25

*Garlough v. FCA US LLC*
No. 2:20-CV-01879-JAM-AC, 2021 WL 4033177 (E.D. Cal. Sept. 3, 2021) ....................... 18

*Kowalsky v. Hewlett-Packard Co.*
771 F. Supp. 2d 1156 (N.D. Cal. 2011) ................................................................................. 18

*Levitt v. Yelp! Inc.*
765 F.3d 1123 (9th Cir. 2014) ............................................................................................... 17

*Lozano v. AT&T Wireless Servs., Inc.*
504 F.3d 718 (9th Cir. 2007) ................................................................................................ 17

*Marcos v. JPMorgan Chase Bank, N.A.*
No. 118CV00489DADEPG, 2018 WL 3524619 (E.D. Cal. July 20, 2018) ........................... 17

*Matsushita Electric Industries Co. v. Zenith Radio*
475 U.S. 574 (1986) ................................................................................................................ 2

*Poghosyan v. First Fin. Asset Mgmt., Inc.*
No. 119CV01205DADSAB, 2020 WL 433083 (E.D. Cal. Jan. 28, 2020) ....................... 12, 18

*Regal Knitwear Co. v. N.L.R.B.*
324 U.S. 9 (1945) ................................................................................................................. 24

ii

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Wilson v. Hewlett-Packard Co.*
    668 F.3d 1136 (9th Cir. 2012) .................................................................................... 17

**STATUTES**

15 United States Code
    § 375(2)(A)(ii)(II) ...................................................................................................... 8
    §§ 375(5)(A)-(B) ........................................................................................................ 6
    § 375(6) ...................................................................................................................... 5
    § 375(7)(A) ................................................................................................................. 8
    § 375(7)(B) ................................................................................................................. 8
    §§ 376(b)(4)(A)(ii)(I)-(II) .................................................................................... 12, 18
    § 376a ......................................................................................................................... 1
    § 376a(a)(1) ......................................................................................... 10, 11, 12, 18
    § 376a(a)(3) ....................................................................................................... *passim*
    § 376a(a)(3)(A) ................................................................................................... 10, 15
    § 376a(a)(3)(B) ............................................................................................................ 8
    § 376a(a)(3)(D) ................................................................................................... 10, 15
    § 376a(b)(1) ............................................................................................ 5, 10, 11, 18
    § 376a(b)(4)(A)(ii)(I) ............................................................................................... 11
    § 376a(b)(4)(A)(ii)(II) .............................................................................................. 11
    § 378(b) .................................................................................................................... 17
    § 378(c)(1)(A) ............................................................................................... 17, 25, 27

18 United States Code
    § 1716E ............................................................................................................ *passim*
    § 1716E(a) ............................................................................................................... 10
    § 1716E(h)(1) ................................................................................................ 17, 25, 27

21 United States Code
    § 321(rr) ................................................................................................................... 15
    § 331(c) ............................................................................................................ *passim*
    § 331A ...................................................................................................................... 15
    § 337(a) .................................................................................................................... 17
    § 387b(6) ............................................................................................................ 15, 16
    §§ 387j(a)(1)-(2) ...................................................................................................... 15
    § 387j(a)(2)(A) ......................................................................................................... 15
    § 387j(c)(1)(A)(i) ................................................................................................ 15, 16

iii

**TABLE OF AUTHORITIES**
(continued)

Page

California Business and Professions Code
  § 17200 ............................................................................................................... *passim*
  § 17203 ............................................................................................................... 25, 27
  § 17205 ............................................................................................................... 22
  § 17206 ............................................................................................................... 22
  § 17206(a) ........................................................................................................... 22, 23, 24, 27
  § 17206(b) ........................................................................................................... 22
  §§ 22950-22964 ................................................................................................... 26
  §§ 22950.5(d)(1)(A)-(C) ..................................................................................... 7, 14
  § 22958 ................................................................................................................ 1, 20
  § 22958(a) ........................................................................................................... 18
  § 22958(a)(1) ....................................................................................................... 14, 15
  § 22963 ................................................................................................................ 1, 21
  § 22963(a) ........................................................................................................... *passim*
  § 22963(b)(1)(A) ................................................................................................. 12, 13, 14, 18
  § 22963(b)(3) ....................................................................................................... 14, 18
  § 22963(f) ............................................................................................................ 20, 21, 22, 27
  § 22971(q) ........................................................................................................... 6
  § 22971(r)(1) ....................................................................................................... 6
  § 22971.7(a) ........................................................................................................ 7, 14
  § 22972(a) ........................................................................................................... *passim*
  § 22974.8 ............................................................................................................. 20
  § 22980.1(a) ........................................................................................................ 6
  § 22980.1(b) ........................................................................................................ 6

California Cigarette and Tobacco Products Licensing Act
  §§ 22970-22995 ................................................................................................... 5, 26
  §§ 31000-31008 ................................................................................................... 26

California Cigarette and Tobacco Products Licensing Act of 2003 ............................................ 5

California Cigarette and Tobacco Products Tax Law ................................................................. 5, 26

California Revenue and Taxation Code
  §§ 30001-30483 ................................................................................................... 5, 26
  § 30101.7 ............................................................................................................. 1, 6, 19, 21
  §§ 30101.7(c)(3)(A)-(B) ...................................................................................... 6
  § 30101.7(c)(4) ................................................................................................... 5
  § 30101.7(d)(1) ................................................................................................... 5
  § 30101.7(d)(2) ................................................................................................... *passim*
  § 30101.7(g) ........................................................................................................ 19, 20, 27
  §§ 31000-31008 ................................................................................................... 26
  § 31001 ................................................................................................................ 9
  § 31002(a)(2) ....................................................................................................... 8
  § 31002(d)(1) ....................................................................................................... 9, 10, 18

iv

**TABLE OF AUTHORITIES**
(continued)

Page

§ 31002(d)(2)(A) .................................................................................................. 9, 10, 18
§ 31002(f) .................................................................................................................... 9
§ 31003 ................................................................................................................ 9, 10, 18

California's Unfair Competition Law ......................................................................... 17, 18, 25

California Stop Tobacco Access to Kids Enforcement Act ........................................................ 26

E-Cigarettes to Children Act ............................................................................................... 8

Healthy Outcomes and Prevention Education Act ................................................................. 26

Licensing Act ............................................................................................................... 6

PACT Act ........................................................................................................... *passim*

PACT Act, 15 U.S.C. §§ 375–378 .................................................................................. 25, 26

PACT Act, March 31, 2010, P.L. 111-154, 124 Stat. 1087, 1087–88 §§ 1(b)-(c) ...................... 17

PACT Act, Pub. L. No. 111-154, 124 Stat. 1087, §§ 1(b)-(c) (2010) ....................................... 15

POSECA ..................................................................................................................... 8

Prevent All Cigarette Trafficking Act, 15 U.S.C. §§ 375-378 ............................................. 5, 6, 8

STAKE Act ................................................................................................................. 1

**COURT RULES**

Federal Rules of Civil Procedure
Rule 56 ...................................................................................................................... 1
Rule 56(a) ................................................................................................................... 1
Rule 65(d)(2) ............................................................................................................. 24

Local Rule 140(a)(iv) ................................................................................................... 21

**OTHER AUTHORITIES**

CDC, *E-Cigarette Use Among Youth* (October 17, 2024)
https://www.cdc.gov/tobacco/e-cigarettes/youth.html ........................................................ 22

E-Cigarettes Authorized by the FDA
https://digitalmedia.hhs.gov/tobacco/hosted/Authorized-ENDS-July2025.pdf ...................... 15

Ejuicesteals' website
www.ejuicesteals.com ............................................................................................... *passim*

## INTRODUCTION

Defendants Ejuicesteals.com ("Ejuicesteals") and Remon Hanna (collectively, "Defendants") unlawfully sold age-restricted tobacco products to California customers through their website, www.ejuicesteals.com, in violation of state and federal laws designed to protect the public, and in particular, California's youth population from harm and addiction.

The undisputed evidence shows that Defendants made delivery sales to California customers without complying with tobacco-related licensing and tax laws, failed to comply with age-verification laws, failed to adhere to tobacco-related shipping laws, and unlawfully used the United States Postal Service to ship their products. Unsurprisingly, Defendants' disregard for the laws designed to protect California's underaged youth directly resulted in sales to that very demographic.

While Ejuicesteals' website has ostensibly shut down, and the business has been dissolved, Defendants must not avoid the consequences of their illegal operations. Plaintiff the People of the State of California ("Plaintiff" or "State"), therefore, moves for entry of judgment on each of its claims, entry of a permanent injunction, and assessment of civil penalties in the total amount of $1,186,000.

## BACKGROUND AND CLAIMS

This action was commenced on December 14, 2023, for violations of the following laws: (1) the Prevent All Cigarette Trafficking Act ("PACT Act"), 18 U.S.C. § 1716E; (2) the PACT Act, 15 U.S.C. § 376a; (3) the California Cigarette and Tobacco Products Tax Law, Cal. Rev. & Tax. Code § 30101.7; (4) the Stop Tobacco Access to Kids Act ("STAKE Act"), Cal. Bus. & Prof. Code, §§ 22958, 22963; and (5) California Unfair Competition Law, Cal. Bus. & Prof. Code, § 17200. Compl., ECF No. 1. Defendants answered on July 7, 2024. Ans., ECF No. 8.

## LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if it is supported by evidence "such that a reasonable jury could return a verdict for the nonmoving

1

party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if a dispute about the fact might affect the outcome of the case. *Id*. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id*.

The moving party bears the initial burden of production demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party moving for summary judgment may discharge its burden by "'showing'—that is, pointing out to the District Court—that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. If the nonmoving party fails to produce the required evidence, the moving party must prevail. *Id*. at 323. The party opposing the motion may not rest on conclusory allegations or mere assertions; instead, it must come forward with probative evidence that, taken the record as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Electric Industries Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

## SUMMARY OF FACTS [1]

Ejuicesteals sold tobacco products, including electronic cigarettes ("e-cigarettes"), (collectively, "tobacco products") through its website, www.ejuicesteals.com. UMF ¶3. The website, www.ejuicesteals.com, operated from 2016 through the end of December 2024. UMF ¶¶2, 4.

Defendant Remon Hanna was Ejuicesteals' Chief Executive Officer, Chief Financial Officer, Secretary, and Director and was the only person in control of all Ejuicesteals' operations since August 2019. UMF ¶¶5-6. Mr. Hanna was responsible for all operations of Ejuicesteals, including purchasing products, processing shipments, paying taxes, obtaining licenses, legal compliance, customer service, entering into agreements, hiring employees, managing employees, providing instructions to employees, and terminating employment. UMF ¶7.

During the period January 2019 through the end of its operations, Ejuicesteals shipped and sold tobacco products from several locations, including: (1) 17911 Skypark Circle, Irvine, CA 92614; (2) 51 Peters Canyon Road, Irvine, CA 92606; (3) 2841 Unicorn Road, Suite 102,

---

[1] Plaintiff respectfully refers the Court to its full Statement of Material Undisputed facts filed contemporaneously herewith.

2

Bakersfield, CA 93308; and (4) 10010 Rosedale Highway, Unit 2, Bakersfield, CA 93312. UMF ¶¶8-9, 11-12, 14-15, 17-18.

Ejuicesteals sold and shipped tobacco products to California customers from these locations without holding a required tobacco retailer license. UMF ¶¶10, 13, 16, 19.

Ejuicesteals used the United States Postal Service ("USPS") to deliver packages containing tobacco products to California customers while knowing that federal law prohibited the use of USPS for such shipments. UMF ¶¶27-28, 32, 47-48, 79-80, 83, 100.

Ejuicesteals did not use a method of shipping tobacco products that required a signature from a person 21 or older and a valid, government-issued identification at the time of delivery. UMF ¶¶28, 47, 87, 96, 99, 103.

Ejuicesteals used Auctane LLC ("Auctane") services, including Auctane's subsidiaries ShipStation and Stamps.com, to create labels Ejuicesteals attached to packages containing tobacco products shipped to its customers and purchase package postage for shipments through USPS. UMF ¶¶81-83.

Auctane package shipment data for Ejuicesteals shows 671 shipments to California customers using USPS addressed from 17911 Skypark Circle, Irvine, CA 92614 during the period April 11, 2019 through August 28, 2019. UMF ¶91. None of the shipments to California customers using USPS addressed from 17911 Skypark Circle, Irvine, CA 92614 included "Adult Signature" delivery confirmation. UMF ¶92.

Auctane package shipment data for Ejuicesteals shows 962 shipments to California customers using USPS addressed from 51 Peters Canyon Road, Irvine, CA 92606 during the period August 26, 2019, through February 25, 2020. UMF ¶93. None of the shipments to California customers using USPS addressed from 51 Peters Canyon Road, Irvine, CA 92606 included "Adult Signature" delivery confirmation. UMF ¶94.

Auctane package shipment data for Ejuicesteals shows 296 shipments to California customers using USPS addressed from 2841 Unicorn Rd, STE 102, Bakersfield, CA 93308, during the period September 6, 2021 through January 28, 2022. UMF ¶95. None of the shipments

3

to California customers using USPS addressed from 2841 Unicorn Rd, STE 102, Bakersfield, CA 93308, included "Adult Signature" delivery confirmation. UMF ¶96.

Auctane package shipment data for Ejuicesteals shows 3,635 shipments to California customers using USPS addressed from 10010 Rosedale Hwy, Unit 3, Bakersfield, CA 93312, during the period January 29, 2022, through April 22, 2024. UMF ¶97. Only 58 of the 3,635 shipments to California customers from 10010 Rosedale Hwy, Unit 3, Bakersfield, CA 93312, included "Adult Sig Required" delivery confirmation. UMF ¶98.

Package shipment data produced by Ejuicesteals shows 3,801 shipments to California customers using USPS during the period November 8, 2021, though December 30, 2023. UMF ¶100. Ejuicesteals package shipment data shows that only 56 of the 3,801 shipments to California customers using USPS included "Adult Signature" confirmation during the period January 29, 2022, through April 22, 2024. UMF ¶101.

Ejuicesteals also collected California Electronic Cigarette Excise Tax ("CECET") from California customers but did not remit it to the California Department of Tax and Fee Administration or file the required tax returns. UMF ¶¶55-65. Furthermore, Ejuicesteals did not provide its California customers the required written statement regarding CECET. UMF ¶66.

Ejuicesteals enrolled California customers and sold tobacco products to them, through its website, *before* verifying that the California purchasers were 21 years of age or older. UMF ¶¶69-71, 74, 76-78. Ejuicesteals made sales to a total of 3,785 California customers before verifying that they are 21 years or older during the period February 19, 2019, through June 7, 2020. UMF ¶77. Of these California sales, Ejuicesteals sold tobacco products to 47 California customers who were confirmed to be underage by Ejuicesteals' own age verification vendor, BlueCheck, Inc. UMF ¶78.

Ejuicesteals accepted from California purchasers a pre-paid Visa debit card not associated with the purchasers' identity or any other person's personally identifying information, such as, name, address, or date of birth to verify that the purchaser was 21 years or older. UMF ¶¶23, 43.

Ejuicesteals did not make the required telephone calls after 5 p.m. to California customers before shipping the tobacco products. UMF ¶¶26, 46, 67.

4

Ejuicesteals delivered tobacco products to California customers in packages that did not include the label required under 15 U.S.C. § 376a(b)(1). UMF ¶¶33, 49.

Ejuicesteals sold and delivered to California customers tobacco products that were not approved for sale in the United States by the federal Food and Drug Administration. UMF ¶¶23-25, 37, 42, 44, 53, 106-107.

## ARGUMENT

**I.     DEFENDANTS' BUSINESS WAS UNLAWFUL BECAUSE THEY FAILED TO HOLD REQUIRED TOBACCO LICENSES**

Any person who engages in delivery sales of tobacco products to a person in California must, among other things, obtain and maintain any applicable licenses and accounts required under California Cigarette and Tobacco Products Tax Law, Cal. Rev. & Tax. Code §§ 30001-30483, and the California Cigarette and Tobacco Products Licensing Act of 2003 ("Licensing Act"), Cal. Bus. & Prof. Code §§ 22970-22995, as if the delivery sale occurred entirely within this State. Cal. Rev. & Tax. Code § 30101.7(d)(2).

A delivery seller must also fully comply with the requirements of the Prevent All Cigarette Trafficking Act ("PACT Act"), 15 U.S.C. §§ 375-378. Cal. Rev. & Tax. Code § 30101.7(d)(1)

A person who makes a delivery sale is defined as a "delivery seller". Cal. Rev. & Tax. Code § 30101.7(c)(4). California's definition of the term "delivery seller" is identical to the definition of this term under 15 U.S.C. § 375(6).

The term "delivery sale" means sale of cigarettes or tobacco products into and in California in either of the following cases: (1) the consumer submits the order for the sale by means of a telephone or other method of voice transmission, the mail, or the Internet or other online service, or the seller is otherwise not in the physical presence of the consumer when the request for purchase or order is made; or (2) the cigarettes or tobacco products are delivered to the consumer by common carrier, private delivery service, or other method of remote delivery, or the seller is

5

not in the physical presence of the consumer when the consumer obtains possession of the cigarettes or tobacco products. Cal. Rev. & Tax. Code §§ 30101.7(c)(3)(A)-(B). [2]

Defendant Ejuicesteals made unlawful sales of tobacco products, including e-cigarettes, to California customers through its website, www.ejuicesteals.com. UMF ¶3. The website, www.ejuicesteals.com, operated from 2016 through the end of December 2024. UMF ¶¶2, 4. Ejuicesteals was a delivery seller making delivery sales subject to compliance with California Revenue and Taxation Code § 30101.7 and the PACT Act, 15 U.S.C. §§ 375-378.

Under California law, a tobacco retailer is required to obtain and maintain a license to engage in the sale of tobacco products within the State. Cal. Bus. & Prof. Code § 22972(a). A tobacco retailer that owns or controls more than one retail location must obtain a separate license for each retail location. *Id*. The term "tobacco retailer" means a person who engages in California in the sale of cigarettes or tobacco products directly to the public from a retail location. Cal Bus. & Prof. Code § 22971(q). The term "retail location" includes *any* building from which cigarettes or tobacco products are sold at retail. Cal Bus. & Prof. Code § 22971(r)(1) (emphasis added). Under the California licensing regime, only licensed tobacco retailers may sell tobacco products to California customers who purchase the products for their own use or consumption. [3]

For the purposes of California's tobacco retailer licensing, the term "tobacco products" includes: (1) a product containing, made, or derived from tobacco or nicotine that is intended for human consumption, whether smoked, heated, chewed, absorbed, dissolved, inhaled, snorted,

---

[2] The definition of this term under the PACT Act is nearly identical. "The term 'delivery sale' means any sale of cigarettes or smokeless tobacco to a consumer if—(A) the consumer submits the order for the sale by means of a telephone or other method of voice transmission, the mails, or the Internet or other online service, or the seller is otherwise not in the physical presence of the buyer when the request for purchase or order is made; or (B)the cigarettes or smokeless tobacco are delivered to the buyer by common carrier, private delivery service, or other method of remote delivery, or the seller is not in the physical presence of the buyer when the buyer obtains possession of the cigarettes or smokeless tobacco." 15 U.S.C. §§ 375(5)(A)-(B).

[3] Holders of other tobacco licenses other than a tobacco retailer license under the Licensing Act, such as tobacco manufacturers, tobacco distributors, and tobacco wholesalers, cannot make sales of tobacco products to an unlicensed person such as a consumer who purchases the products for its own use or consumption. *See* Cal. Bus. & Prof. Code § 22980.1(a) (prohibiting a tobacco manufacturer from selling tobacco products to a distributor, wholesaler, retailer, or *any other person* who is not licensed); *see also* Cal. Bus. & Prof. Code § 22980.1(b) (prohibiting a distributor or wholesaler from selling tobacco products to a retailer, wholesaler, distributor, or *any other person* who is not licensed).

sniffed, or ingested by any other means, including, but not limited to, cigarettes, cigars, little cigars, chewing tobacco, pipe tobacco, or snuff; (2) an electronic device that delivers nicotine or other vaporized liquids to the person inhaling from the device, including, but not limited to, an electronic cigarette, cigar, pipe, or hookah; (3) any component, part, or accessory of a tobacco product, whether or not sold separately. Cal Bus. & Prof. Code §§ 22950.5(d)(1)(A)-(C); Cal Bus. & Prof. Code § 22971.7(a).

Ejuicesteals sold and shipped tobacco products to California customers from building located at: (1) 17911 Skypark Circle, Irvine, California 92614, from September 2018 through August 2019; (2) 51 Peters Canyon Road, Irvine, California 92606, from June 2017 through February2020; (3) 2841 Unicorn Road, Suite 102, Bakersfield, California 93308, from August 2020 through January 2022; and (4) 10010 Rosedale Highway, Unit 3, Bakersfield, California 93312 from May 2021 through December 2024. UMF ¶7, 8, 10, 11, 13, 14, 16, 17. Therefore, Ejuicesteals was a retailer of tobacco products and was required to hold a tobacco retailer license pursuant to California Business and Professions Code § 22972(a) and as required for a delivery seller under California Revenue and Taxation Code § 30101.7(d)(2).

Ejuicesteals did not hold a tobacco retailer license for its retail locations at: (1) 17911 Skypark Circle, Irvine, California 92614, during the period January 1, 2019, through December 31, 2024; (2) 51 Peters Canyon Road, Irvine, California 92606, during the period January 1, 2019, through December 31, 2024; (3) 2841 Unicorn Road, Suite 102, Bakersfield, California 93308, during the period January 1, 2019, through December 31, 2024; and (4) 10010 Rosedale Highway, Unit 3, Bakersfield, California 93312, during the period January 2019, through August 30, 2023. UMF ¶¶10, 13, 16, 19. [4] Ejuicesteals' failure to obtain the required State licenses to operate, entitles Plaintiff to judgment as a matter of law for the violation California Revenue and Taxation Code § 30101.7(d)(2) and California Business and Professions Code § 22972(a).

/ / /

---

[4] According to the California Department of Tax and Fee Administration official licensing records, Ejuicesteals obtained a tobacco retailer license for 10010 Rosedale Highway, Unit 3, Bakersfield, California 93312 effective August 31, 2023.

7

In addition to California law, the PACT Act, 15 U.S.C. §§ 375-378 and 18 U.S.C. § 1716E, regulates delivery sales of cigarettes and smokeless tobacco on the federal level. [5] The PACT Act's definition of the term "cigarette" includes "electronic nicotine delivery systems" ("e-cigarettes").[6] 15 U.S.C. § 375(2)(A)(ii)(II). The PACT Act requires a delivery seller to comply with "*all* State, local, tribal, and other laws generally applicable to sales of cigarettes or smokeless tobacco as if the delivery sales occurred entirely within the specific State and place", including, among other things, laws imposing licensing requirements. *See* 15 U.S.C. § 376a(a)(3)(B) (emphasis added). Ejuicesteals violated 15 U.S.C. § 376a(a)(3)(B) by making delivery sales of e-cigarettes without complying with licensing requirements of California Revenue and Taxation Code § 30101.7(d)(2) and California Business and Professions Code § 22972(a). Therefore, Plaintiff is entitled to judgment as a matter of law that Ejuicesteals violated 15 U.S.C. § 376a(a)(3).

## II.    DEFENDANTS' BUSINESS WAS UNLAWFUL BECAUSE THEY FAILED TO TIMELY FILE CECET RETURNS, REMIT CECET TAX, AND PROVIDE CECET COLLECTION DISCLOSURE

Effective July 1, 2022, a retailer of electronic cigarettes ("e-cigarettes") is required to collect from California purchasers a tax known as the California Electronic Cigarette Excise Tax ("CECET").[7] Cal. Rev. & Tax. Code § 31002(a)(2). To do so, a retailer of e-cigarettes must

---

[5] The PACT Act originally addressed cigarettes and smokeless tobacco, but other tobacco products have grown in popularity since its passage. Since 2009, when the PACT Act was enacted, a number of tobacco companies have developed e-cigarettes with high nicotine content and in a myriad of kid-friendly flavors favored by youth. In response, Congress passed the Prevent Online Sales of E-Cigarettes to Children Act ("POSECA") in December 2020, extending the same online sales requirements in place for cigarettes and smokeless tobacco to e-cigarettes as well. Effective March 27, 2021, POSECA amended the PACT Act definition of the term "cigarette" to include "electronic nicotine delivery systems" (hereinafter "ENDS" or "e-cigarettes"), *see* 15 U.S.C. § 375(2)(A)(ii)(II), and therefore made the PACT Act provisions applicable to these products.

[6] The term "electronic nicotine delivery system" means "any electronic device that, through an aerosolized solution, delivers nicotine, flavor, or any other substance to the user inhaling from the device," *see* 15 U.S.C. § 375(7)(A), and includes: "(i) an e-cigarette; (ii) an ehookah; (iii) an e-cigar; (iv) a vape pen; (v) an advanced refillable personal vaporizer; (vi) an electronic pipe; and (vii) any component, liquid, part, or accessory of a device described in subparagraph (A), without regard to whether the component, liquid, part, or accessory is sold separately from the device," *see* 15 U.S.C. § 375(7)(B).

[7] For the purposes of CECET collection, the term "electronic cigarette" includes any of
(continued…)

8

register with California Department of Tax and Fee Administration ("CDTFA") for a CECET permit. Cal. Rev. & Tax. Code § 31002(f). Then, the retailer must file a CECET return on or before the last day of the month following each quarterly period for the preceding quarterly period. Cal. Rev. & Tax. Code § 31002(d)(2)(A). Here, Ejuicesteals began collecting CECET from California customers when the law became effective on July 1, 2022. UMF ¶55. However, Ejuicesteals did not file with CDTFA the required CECET returns during the period July 1, 2022, through October 31, 2023.[8] UMF ¶¶56-60. Therefore, Plaintiff is entitled to judgment as a matter of law for Ejuicesteals, violation of California Revenue and Taxation Code § 31002(d)(2)(A).

A retailer of e-cigarettes must also remit to CDTFA, CECET quarterly on or before the last day of the month following each calendar quarter. Cal. Rev. & Tax. Code § 31002(d)(1). Here, Ejuicesteals did not remit to CDTFA the CECET during the period July 1, 2022, through October 31, 2023. UMF ¶¶61-65. Therefore, Plaintiff is entitled to judgment as a matter of law that Ejuicesteals violated California Revenue and Taxation Code § 31002(d)(1).

Further, for *each* retail sale of an e-cigarette, a retailer must also provide a purchaser with a receipt or other document that sets out and separately identifies the "California Electronic Cigarette Excise Tax" and the amount paid by the purchaser. Cal. Rev. & Tax. Code § 31003. Here, Ejuicesteals did not include a statement regarding the "California Electronic Cigarette Excise Tax" and did not separately state the amount of the CECET collected in its receipts or other documents provided to California customers during the period of July 2022 through December 2023. UMF ¶¶23, 37, 43, 52, 66. Therefore, Plaintiff is entitled to judgment as a matter of law because Ejuicesteals also violated California Revenue and Taxation Code § 31003.

---

the following: "(A) A device or delivery system sold in combination with any liquid substance containing nicotine that can be used to deliver to a person nicotine in aerosolized or vaporized form, including, but not limited to, an e-cigarette, e-cigar, e-pipe, vape pen, or e-hookah; (B) A component, part, or accessory of a device described in subparagraph (A) that is used during the operation of the device if sold in combination with a liquid substance containing nicotine; (C) A liquid or substance containing nicotine, whether sold separately or sold in combination with any device, that could be used to deliver to a person nicotine in aerosolized or vaporized form." Cal. Rev. & Tax Code § 31001.

[8] According to CDTFA official tax and account registration records, Ejuicesteals obtained a CECET account effective July 1, 2022, but failed to file the required quarterly tax returns and remit CECET tax it collected from its customers.

9

Finally, in addition to California law, a delivery seller must comply with California's laws imposing excise taxes and other payment obligations or legal requirements relating to the sale of e-cigarettes. 15 U.S.C. §§ 376a(a)(3)(A), (D). Ejuicesteals violated 15 U.S.C. §§ 376a(a)(3)(A), (D) by making delivery sales of e-cigarettes without complying with excise tax payment, excise tax reporting, and excise tax statement requirements imposed under California Revenue and Taxation Code §§ 31002(d)(1), 31002(d)(2)(A), 31003. Therefore, Plaintiff is also entitled to judgment as a matter of law because Ejuicesteals violated 15 U.S.C. § 376a(a)(3).

III.   **DEFENDANTS' BUSINESS WAS UNLAWFUL BECAUSE THEY SHIPPED AND DELIVERED TOBACCO PRODUCTS THROUGH THE UNITED STATES POSTAL SERVICE**

The PACT Act makes all e-cigarettes nonmailable and prohibits them from being deposited in or carried through the USPS mails, *see* 18 U.S.C. § 1716E(a), absent limited exceptions not applicable herein.

The PACT Act requires a delivery seller to comply with "*all* State, local, tribal, and *other laws generally applicable to sales*" of e-cigarettes, including legal requirements applicable to delivery of e-cigarettes. 15 U.S.C. § 376a(a)(3)(D) (emphasis added). 18 U.S.C. § 1716E(a) is federal law that imposes legal requirements relating to delivery of e-cigarettes. A delivery seller must comply with 18 U.S.C. § 1716E(a) to make delivery sales legally.

Ejuicesteals used USPS to ship and deliver tobacco products to California customers during the period January 2019 through December 31, 2023. UMF ¶¶27-28, 32, 47-48, 79-80, 83, 100. Therefore, Plaintiff is entitled to judgment as a matter of law that Ejuicesteals violated 18 U.S.C. § 1716E and 15 U.S.C. § 376a(a)(3).

IV.   **DEFENDANTS MADE UNLAWFUL SHIPMENTS OF TOBACCO PRODUCTS IN CONTAINERS WITHOUT THE REQUIRED LABELS**

The PACT Act also requires each delivery seller to comply with shipping requirements, including package labeling requirements under 15 U.S.C. § 376a(b)(1). 15 U.S.C. § 376a(a)(1). For any package containing e-cigarettes, the delivery seller must include on the bill of lading, if any, and on the outside of the shipping package, on the same surface as the delivery address, a clear and conspicuous statement providing as follows:

10

"CIGARETTES/NICOTINE/SMOKELESS TOBACCO: FEDERAL LAW REQUIRES THE PAYMENT OF ALL APPLICABLE EXCISE TAXES, AND COMPLIANCE WITH APPLICABLE LICENSING AND TAX-STAMPING OBLIGATIONS". 15 U.S.C. § 376a(b)(1).

On July 12, 2023, and October 3, 2023, California Department of Justice ("DOJ") Special Agents Kutz and Galpin purchased e-cigarettes from Ejuicesteals' website, www.ejuicesteals.com. UMF ¶¶20-23, 40-42. On July 14 and October 5, 2023, the packages containing e-cigarettes Agents Kutz and Galpin purchased from Ejuicesteals were delivered to the agents' California address. UMF ¶¶27-32, 47-48.

The packages containing e-cigarettes Agents Kutz and Galpin received from Ejuicesteals did not include any writing or labels as required under 15 U.S.C. § 376a(b)(1). UMF ¶¶32, 48. The packages did not include any other labels or writing identifying that they contained tobacco products. UMF ¶¶33, 49.

Therefore, Plaintiff is entitled to judgment as a matter of law because Ejuicesteals failed to comply with 15 U.S.C. § 376a(a)(1) and (b)(1) labeling requirements.

## V.   DEFENDANTS' BUSINESS WAS UNLAWFUL BECAUSE THEY FAILED TO COMPLY WITH PACKAGE SHIPMENT AND AGE VERIFICATION REQUIREMENTS

A delivery seller must use a method of mailing or shipping that requires the purchaser placing the order or an adult of 21 years or older, to sign to accept delivery of the shipping container at the delivery address. 15 U.S.C. § 376a(b)(4)(A)(ii)(I). The PACT Act also requires that the person who signs to accept delivery, provide proof, in the form of a valid, government-issued identification bearing a photograph of the individual, that the person is at least 21 or older. 15 U.S.C. § 376a(b)(4)(A)(ii)(II). Ejuicesteals' only method of verifying that the person receiving its packages containing tobacco products was 21 years, or older was through purchasing adult signature delivery. UMF ¶87.

The evidence confirms that Ejuicesteals made 3,931 shipments to California customers using USPS from September 6, 2021, through April 22, 2024, and of these, only 58 included the

adult signature at delivery service. [9] Specifically, there were 296 shipments to California customers using USPS from its location at 2841 Unicorn Rd, STE 102, Bakersfield, CA 93308 during the period September 6, 2021, through January 28, 2022. UMF ¶95. And of these shipments, *none* included "Adult Signature" delivery confirmation. UMF ¶96. Then, Ejuicesteals made 3,635 shipments to California customers using USPS from its location at 10010 Rosedale Hwy, Unit 3, Bakersfield, CA 93312 during the period January 29, 2022, through April 22, 2024. UMF ¶97. Of these, only 58 shipments to California customers included "Adult Signature Required" delivery service. UMF ¶¶98-99. Furthermore, the two packages containing e-cigarettes Ejuicesteals delivered from 10010 Rosedale Hwy, Unit 3, Bakersfield, CA 93312 to Agents Kutz and Galpin in July and October 2023 did not require an adult signature. UMF ¶28, 47.

Therefore, Plaintiff is entitled to judgment as a matter of law because Ejuicesteals violated 15 U.S.C. §§ 376a(a)(1), (b)(4)(A)(ii)(I)-(II). Ejuicesteals failed to use a method of mailing or shipping that requires the purchaser placing the order or an adult of 21years or older to sign to accept delivery of the shipping container and to provide a valid, government-issued identification bearing a photograph of the individual, that the person is at least 21 or older at the time of delivery.

**VI.    DEFENDANTS' BUSINESS WAS UNLAWFUL BECAUSE THEY FAILED TO VERIFY THE AGE OF CALIFORNIA PURCHASERS AS REQUIRED BY STATE LAW**

Under California law, all online sellers of tobacco products, including Ejuicesteals, must *first* verify any person attempting to make a purchase is 21 years or older. Cal. Bus. & Prof. Code § 22963(b)(1)(A). This age verification process requires the online seller to refer to an appropriate database of government records that matches the name, address, and date of birth provided by the customer to someone verified to be 21 years or older *before* making any sale or enrolling the person as a customer. *Id.*

---

[9] Auctane package shipment data for Ejuicesteals shows total 3,931 shipments to California using USPS during September 6, 2021, through April 22, 2024, which consists of 296 shipments from 2841 Unicorn Rd, STE 102, Bakersfield, CA 93308 during the period September 6, 20212021, through January 28, 2022, and 3,635 shipments 10010 Rosedale Hwy, Unit 3, Bakersfield, CA 93312 during the period January 29, 2022, through April 22, 2024.

12

Ejuicesteals hired BlueCheck Inc. ("BlueCheck") to verify the age of California customers who purchased tobacco products through Ejuicesteals' website, www.ejuicesteals.com, between January 2019 and September 2020. UMF ¶68-69. BlueCheck verified the age of each person by matching the person's name and address to publicly available databases using proprietary algorithms/protocols. UMF ¶71. However, BlueCheck only verified Ejuicesteals' customers *after* the sale of tobacco products had taken place. UMF ¶70. Checking the age of a customer only *after* the tobacco sale is made frustrates the purpose of age verification laws.

From February 19, 2019, through June 7, 2020, BlueCheck age verification data identified 3,785 California customers who were age verified only *after* they placed an order through Ejuicesteals' website. UMF ¶76. Thus, Plaintiff is entitled to judgment as a matter of law because Ejuicesteals violated California Business and Professions Code § 22963(b)(1)(A) when it failed to verify that its California customers were 21 years or older *before* enrolling them as a customer or making the sale.

As part of California's age verification law, the seller must also verify that the billing address on the check or credit card offered for payment by the customer matches the address listed in the database of individuals whose age has been verified to be 21 years or older. Cal. Bus. & Prof. Code § 22963(b)(1)(A).

On July 12 and October 3, 2023, Agents Kutz and Galpin visited www.ejuicesteals.com to make undercover purchases of tobacco products. UMF ¶¶20, 40. Agents Kutz and Galpin used their undercover and fictitious identity, supported with a valid California driver's license, and an undercover email account to place an order from www.ejuicesteals.com. UMF ¶¶21, 41. Agents Kutz and Galpin paid for the orders with a pre-paid Visa debit card. UMF ¶¶22, 43. This pre-paid Visa debit card was not associated with the agents' undercover identity or with any other person's personally identifying information, such as, name, address, or date of birth. *Id.* Ejuicesteals could not have verified the billing address on a pre-paid debit card or matched any information to an individual verified to be 21 years or older. Yet, Agents Kutz and Galpin were able to make purchases and receive the purchased e-cigarettes from www.ejuicesteals.com successfully. UMF ¶¶22-25, 32, 36, 42-45, 48, 52. Based on the undercover purchases by Agents Kutz and Galpin,

13

Ejuicesteals did not, because it could not, verify that the billing address on the credit card offered for payment matched anyone verified to be 21 years or older as required by law. Therefore, Plaintiff is entitled to judgment as a matter of law because Ejuicesteals failed to confirm billing addresses in violation of California Business and Professions Code § 22963(b)(1)(A).

In the case of a sale, the online sellers of tobacco products must also make a telephone call after 5 p.m. to the purchaser confirming the order prior to shipping the tobacco products. Cal. Bus. & Prof. Code § 22963(b)(3). In fact, Ejuicesteals conceded it did not make telephone calls after 5 p.m. to California customers who purchased tobacco products from www.ejuicesteals.com, confirming the order prior to shipping the tobacco products during the period January 1, 2019, through December 31, 2019. UMF ¶67. Agents Kutz and Galpin also confirmed that the undercover purchases of tobacco products they made in July and October 2023 were sold and delivered without receiving the required telephone call. UMF ¶¶26, 46. Therefore, Plaintiff is entitled to judgment as a matter of law for Ejuicesteals' failure to comply with California Business and Professions Code § 22963(b)(3).

**VII. DEFENDANTS' BUSINESS WAS UNLAWFUL BECAUSE THEY SOLD TOBACCO PRODUCTS TO UNDERAGE CALIFORNIA CUSTOMERS**

California law prohibits selling, giving away, or in any way furnishing of tobacco products to any person who is under 21 years of age. Cal. Bus. & Prof. Code §§ 22958(a)(1), 22963(a). [10] Through January 9, 2020, BlueCheck used below 21 as the minimum age to verify that Ejuicesteals' customers were of legal age to purchase tobacco products. UMF ¶74. BlueCheck age verification data shows 47 California customers placed orders on Ejuicesteals' website, but later failed age verification because BlueCheck determined those customers were "underage" using proprietary algorithms/protocols designed for age verification. UMF ¶71, 78.

///

///

---

[10] The term "tobacco products" has the same meaning for the purposes of the STAKE Act, Cal Bus. & Prof. Code § 22950.5(d)(1)(A)-(C) and the tobacco retailer license under the Licensing Act, Cal Bus. & Prof. Code § 22971.7(a).

Therefore, Plaintiff is entitled to judgment as a matter of law because Ejuicesteals sold tobacco products to 47 California customers under 21 years of age in violation of California Business and Professions Code §§ 22958(a)(1) and 22963(a).

**VIII. DEFENDANTS' BUSINESS WAS UNLAWFUL BECAUSE THEY DELIVERED UNAPPROVED TOBACCO PRODUCTS IN VIOLATION OF THE PACT ACT**

The PACT Act requires a delivery seller to comply with "*all* State, local, tribal, and *other laws generally applicable to sales of cigarettes or smokeless tobacco* as if the delivery sales occurred entirely within the specific State and place, including laws imposing -- (A) excise taxes; (B) licensing and tax-stamping requirements; (C) restrictions on sales to minors; and (D) other payment obligations or legal requirements relating to the sale, distribution, or delivery of cigarettes or smokeless tobacco". 15 U.S.C. § 376a(a)(3)(A)-(D) (emphasis added). [11]

Federal law generally applicable to sales of tobacco products, including "new tobacco products" such as e-cigarettes, prohibits the receipt in interstate commerce of any tobacco product that is adulterated, and the delivery or proffered delivery thereof for pay or otherwise. 21 U.S.C. § 331(c). [12] A new tobacco product must receive an order from the FDA authorizing its marketing and sale in the United States. 21 U.S.C. § 387j(a)(2)(A). [13] A new tobacco product that has not undergone premarket review and received an order from FDA under 21 U.S.C. § 387j(c)(1)(A)(i) is deemed to be adulterated. 21 U.S.C. § 387b(6).

/ / /

---

[11] The PACT Act is a federal law Congress initially passed to address significant national issues relating to unlawful sales and deliveries of cigarettes and smokeless tobacco that undermined not only federal and state requirements for age verification, tax payments, and fair competition, but also were linked to terrorism. *See* PACT Act, March 31, 2010, P.L. 111-154, 124 Stat. 1087, §§ 1(b)-(c). In December 2020, Congress extended the application of the PACT Act to e-cigarettes because of the unprecedented rise in use of these dangerous and addictive products among youth to epidemic levels.

[12] A "new tobacco product" is "any product made or derived from tobacco, or containing nicotine from any source, that is intended for human consumption, including any component, part, or accessory of a tobacco product," which "was not commercially marketed . . . as of February 15, 2007." 21 U.S.C. §§ 321(rr), 387j(a)(1)-(2).

[13] As of July 2025, the FDA authorized only 39 e-cigarette products for sale in the United States. *See* https://digitalmedia.hhs.gov/tobacco/hosted/Authorized-ENDS-July2025.pdf., last accessed Augst 27, 2025.

Because the PACT Act requires a delivery seller to comply with *all other laws generally applicable to sales of e-cigarette*, Ejuicesteals was required to comply with 21 U.S.C. § 331(c) to make its delivery sales of e-cigarettes lawfully under 15 U.S.C. § 376a(a)(3).

In July and October 2023, Ejuicesteals sold and delivered the following four e-cigarettes to Agents Kutz and Galpin: Flum Ultra Disposable 1800 Puffs (violet ice flavor), Elf Bar Disposables 5000 Puffs (black winter flavor), Candy Barz Disposable 1500 Puffs (mango ice flavor), and Truly Bar Elf Bar Disposable 5000 Puffs (watermelon grape aloe). UMF ¶¶23-25, 36-37, 42, 44-45, 52-53.

E-cigarettes Flum Ultra Disposable 1800 Puffs (violet ice flavor), Elf Bar Disposables 5000 Puffs (black winter flavor), Candy Barz Disposable 1500 Puffs (mango ice flavor), and Truly Bar Elf Bar Disposable 5000 Puffs (watermelon grape aloe) were not, and still are not, on the FDA list of e-cigarettes authorized for sale in the United States at the time of their sale. [14] UMF ¶107. In fact, *none* of the tobacco products Ejuicesteals sold to California consumers were on the list of tobacco products that received an order from the federal FDA pursuant to 21 U.S.C. § 387j(c)(1)(A)(1) authorizing their sale and delivery in the United States. UMF ¶¶106-107. Thus, the tobacco products Ejuicesteals sold and delivered to California customers were adulterated pursuant to 21 U.S.C. § 387b(6).

Therefore, Plaintiff is entitled to judgment as a matter of law because Ejuicesteals violated 15 U.S.C. § 376a(a)(3) when it failed to comply with 21 U.S.C. § 331(c) by delivering adulterated tobacco products to California customers. [15]

---

[14] Contemporaneously with its motion for summary judgement, Plaintiff filed a request for Judicial Notice requesting that the Court take judicial notice of the facts that the following e-cigarettes were not approved by the FDA for sale in the United States: (1) Flum Ultra Disposable 1800 Puffs (violet ice flavor); (2) Elf Bar Disposables 5000 Puffs (black winter flavor); (3) Candy Barz Disposable 1500 Puffs (mango ice flavor); and (4) Truly Bar Elf Bar Disposable 5000 Puffs (watermelon grape aloe).

[15] Outside the plain language of 15 U.S.C. § 376a(a)(3), we are not aware of authority addressing the issues of (1) whether the PACT Act 15 U.S.C. § 376a(a)(3) requires compliance with federal laws generally applicable to sales of e-cigarettes; and (2) whether the State may bring action under the PACT Act to prevent and restrain violations of 21 U.S.C. § 331(c) in particular.

As to the first of these, as noted in *n*.11, Congress enacted the PACT Act to solve national issues relating to delivery sales of tobacco products, and expressly named nonpayment of federal
(continued…)

16

**IX.    DEFENDANTS ENGAGED IN UNFAIR COMPETITION THROUGH THEIR UNLAWFUL BUSINESS ACTS AND PRACTICES**

California's Unfair Competition Law ("UCL") prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200; *see also Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). "Each of these three prongs—unlawful, unfair and fraudulent—provides for 'a separate and distinct theory of liability.'" *Campos v. Dyck O'Neal, Inc.*, No. 2:24-CV-01317-KJM-DB, 2024 WL 2941656, at *3 (E.D. Cal. May 10, 2024) (*quoting Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007)). "[T]he UCL's 'coverage is sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law.'" *Id.* (quoting *Cel–Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal.4th 163, 180 (1999)). "The UCL 'borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable.'" *Id.*; *see also Beaver v. Tarsadia Hotels*, 816 F.3d 1170, 1177 (9th Cir. 2016); *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1129–30 (9th Cir. 2014).

"To state a claim based on an unlawful business act or practice, a plaintiff must allege facts sufficient to show a violation of some underlying law." *Marcos v. JPMorgan Chase Bank, N.A.,* No. 118CV00489DADEPG, 2018 WL 3524619, at *4 (E.D. Cal. July 20, 2018) (citation omitted). "A 'business act or practice' is 'unlawful' under the unfair competition law if it violates

taxes as one such issue. See PACT Act, March 31, 2010, P.L. 111-154, 124 Stat. 1087, 1087–88 §§ 1(b)-(c). Therefore, excluding the requirement for delivery sellers to comply with federal laws that generally apply to the sale and delivery of the products the PACT Act regulates would undermine Congressional intent.

As to the second, Plaintiff acknowledges 21 U.S.C. § 337(a) requires all proceedings for the enforcement, or to restrain violations, of the Federal Food, Drug, and Cosmetic Act, of which 21 U.S.C. § 331(c) is a part, be brought by and in the name of the United States. However, Plaintiff brings this action under the authority given it by the PACT Act, 15 U.S.C. § 376a(a)(3). And because 21 U.S.C. § 331(c) generally applies to sales of e-cigarettes, it applies to delivery sales under the PACT Act. Moreover, Congress expressly granted authority to administer and enforce the PACT Act not only to federal government, see 15 U.S.C. § 378(b), but also to the States, through their own Attorneys General, to enforce the PACT, see 15 U.S.C. § 378(c)(1)(A), 18 U.S.C. § 1716E(h)(1). Therefore, Plaintiff requests injunctive relief preventing and restraining Defendants from making delivery sales of e-cigarettes unlawfully in violation of 15 U.S.C. § 376a(a)(3) by delivering prohibited adulterated e-cigarettes to California customers. Plaintiff can provide additional briefing on these issues at the Court's request.

17

a rule contained in some other state or federal statute." *Garlough v. FCA US LLC*, No. 2:20-CV-01879-JAM-AC, 2021 WL 4033177, at *5 (E.D. Cal. Sept. 3, 2021) (*quoting Sandoz Inc. v. Amgen Inc.*, 137 S. Ct. 1664, 1673 (2017). "Virtually any state, federal or local law can serve as the predicate for an action under [the UCL]." *Campos v. Dyck O'Neal, Inc.*, No. 2:24-CV-01317-KJM-DB, 2024 WL 2941656, at *3 (E.D. Cal. May 10, 2024) (*citation omitted*); *see also Poghosyan v. First Fin. Asset Mgmt., Inc.*, No. 119CV01205DADSAB, 2020 WL 433083, at *8 (E.D. Cal. Jan. 28, 2020) (*quoting Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012)).

The UCL "imposes strict liability." *Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp. 2d 1156, 1160 (N.D. Cal. 2011). It is not necessary to establish that the defendants had knowledge or intent to commit the unlawful acts. *Id*.

Ejuicesteals engaged in unfair completion by violating the following state and federal laws: (1) California Revenue and Taxation Code § 30101.7(d)(2), California Business and Professions Code § 22972(a), and 15 U.S.C. § 376a(a)(3) by making delivery sales of tobacco products from unlicensed California retail locations; (2) California Revenue and Taxation Code §§ 31002(d)(1), 31002(d)(2)(A), 31003, and 15 U.S.C. § 376a(a)(3) by not timely filing CECET returns, not timely remitting CECET, and not complying with CECET statement requirement; (3) 18 U.S.C. § 1716E and 15 U.S.C. § 376a(a)(3) by delivering e-cigarettes through USPS; (4) 15 U.S.C. § 376a(a)(1), (b)(1) by not complying with the PACT Act package labeling requirements; (5) 15 U.S.C. §§ 376a(a)(1), (b)(4)(A)(ii)(I)-(II) by not complying with package shipment and age aerification requirements; (6) California Business and Professions Code § 22963(b)(1)(A) by failing to verify the age of California purchasers before enrolling them as customers or making the sale; (7) California Business and Professions Code § 22963(b)(3) by failing to make a telephone call after 5 p.m. to California purchasers confirming the order prior to shipping the tobacco products; (8) California Business and Professions Code §§ 22958(a), 22963(a) by selling tobacco products to underage California customers; (9)15 U.S.C. § 376a(a)(3) by not complying with 21 U.S.C. § 331(c) by delivering adulterated tobacco products to California customers.

///

18

Therefore, Plaintiff is entitled to judgment as a matter of law because Ejuicesteals violated California Business and Professions Code § 17200 when it violated state and federal laws applicable to the sale and delivery of tobacco products.

## X.   CIVIL MONETARY PENALTIES AND PERMANENT INJUNCTION

### A.   Civil Monetary Penalties

#### 1.   Civil monetary penalty under California Revenue and Taxation Code § 30101.7(g)

The California Attorney General may bring a civil action against a person who violates California Revenue and Taxation Code § 30101.7. Cal. Rev. & Tax. Code § 30101.7(g). In addition to any other remedy provided by law, the court must assess a civil penalty for violations of California Revenue and Taxation Code § 30101.7 in accordance with the following schedule: (1) A civil penalty of not less than one thousand dollars ($1,000) and not more than two thousand dollars ($2,000) for the first violation; (2) A civil penalty of not less than two thousand five hundred dollars ($2,500) and not more than three thousand five hundred dollars ($3,500) for the second violation within a five-year period; (3) A civil penalty of not less than four thousand dollars ($4,000) and not more than five thousand dollars ($5,000) for the third violation within a five-year period; (4) A civil penalty of not less than five thousand five hundred dollars ($5,500) and not more than six thousand five hundred dollars ($6,500) for a fourth violation within a five-year period; (5) A civil penalty of up to ten thousand dollars ($10,000) for a fifth or subsequent violation within a five-year period. Cal. Rev. & Tax. Code § 30101.7(g).

The undisputed facts show that from January 2019 through August 2023, Ejuicesteals made sales and shipments of tobacco products to California customers without holding a tobacco retailer license required under California Business and Professions Code § 22972(a) and California Revenue and Taxation Code § 30101.7(d)(2) for the following California retail locations: (1) 17911 Skypark Circle, Irvine, CA 92614; (2) 51 Peters Canyon Road, Irvine, CA 92606; (3) 2841 Unicorn Rd, STE 102, Bakersfield, CA 93308; and (4) 10010 Rosedale Hwy, Unit 3, Bakersfield, CA 93312.

/ / /

Plaintiff used a conservative approach to calculate civil penalties for Ejuicesteals' licensing violations. Instead of using the applicable amounts of penalties authorized under California Revenue and Taxation Code § 30101.7(g) and applying them to each unlawful sale transaction, which would have resulted in millions of dollars because *each* of Ejuicesteals' sales were unlawful and the number of sales were substantial, Plaintiff made the penalty calculations based on monthly violations.[16] More specifically, Plaintiff applied the minimum amount of penalty per month of Ejuicesteals' unlicensed operations during the period January 2019 to August 2023. Thorburn Decl. ¶55. Under these calculations, the civil penalty totals **$573,000**. Thorburn Decl. ¶56.

While Plaintiff's request for civil penalty are significant, they are far below the statutory bounds set by California Revenue and Taxation Code § 30101.7(g). Moreover, the requested civil penalty is proportionate to Defendants' egregiousness and the extent of the offense. Defendants' licensing violations undermine California's critical and comprehensive tobacco licensing scheme that provides oversight to the sale of age-restricted tobacco products. Importantly, California's tobacco laws serve as a mechanism to hold tobacco retailers that sell tobacco products to minors accountable through imposition of extensive penalties and license suspensions and revocations, *see* Cal. Bus. & Prof. Code §§ 22958, 22974.8. Defendants' violations of these laws were not isolated occurrences, but rather part of a persistent pattern of wrongful conduct during all periods of operations, even after the State's demands for compliance.

Therefore, Plaintiff's request for the total civil penalty of **$573,000** under California Revenue and Taxation Code § 30101.7(g) is appropriate under the circumstances.

    **2.**    **Civil monetary Penalty Under California Business and Professions Code § 22963(f)**

Pursuant to California Business and Professions Code § 22963(f), the California Attorney General is empowered to assess civil penalties against any person, firm, corporation, or other

---

[16] Plaintiff used this conservative method of penalty calculations considering the mitigating factors existing in this case, including that Ejuicesteals closed its business and stopped selling tobacco products through its websites, www.ejuicesteals.com, at the end of December 2024.

entity that violates California Business and Professions Code § 22963 according to the following schedule: (1) A civil penalty of not less than one thousand dollars ($1,000) and not more than two thousand dollars ($2,000) for the first violation; (2) A civil penalty of not less than two thousand five hundred dollars ($2,500) and not more than three thousand five hundred dollars ($3,500) for the second violation; (3) A civil penalty of not less than four thousand dollars ($4,000) and not more than five thousand dollars ($5,000) for the third violation within a five-year period; (4) A civil penalty of not less than five thousand five hundred dollars ($5,500) and not more than six thousand five hundred dollars ($6,500) for the fourth violation within a five-year period; (5) A civil penalty of ten thousand dollars ($10,000) for a fifth or subsequent violation within a five-year period. Cal. Bus. & Prof. Code § 22963(f).

California Attorney General brought this action on behalf of the People of the State of California against Defendants and is authorized to seek civil penalties under California Business and Professions § 22963(f) for violations of this section. Ejuicesteals made **47** sales to California customers who were under 21 years of age in violation of California Business and Professions Code § 22963(a). Thorburn Decl. 38. Plaintiff used the minimum civil penalties amounts authorized under California Business and Professions Code § 22963(f) to calculate the civil penalty. Under these calculations, the civil penalty totals **$443,000**. Thorburn Decl. ¶59, Thorburn Decl. 9. [17] While Plaintiff's request for civil penalty is significant, it is far below the statutory bounds set by California Business and Professions Code § 22963(f) and appropriate under the circumstances. [18]

Defendants' age verification violations and direct sales to minors undermine tobacco control age restriction laws in California aimed to reduce tobacco use initiation by limiting access

---

[17] In compliance with Local Rule 140(a)(iv), California customers' date of birth was partially redacted to only include the year of birth in Exhibit 9 of Thorburn Declaration. An unredacted version is available to file under seal or for the Court's in camera review, if necessary.

[18] Plaintiff used the most conservative approach to calculate civil penalties for Ejuicesteals' age verification violations. Instead of using the applicable amounts of penalties authorized under California Business and Professions Code § 22963(f) and applying them to each of the 3,785 unlawful sales, which would have resulted in millions, Plaintiff calculated civil penalties for Ejuicesteals' sales to minor, for the same mitigating reasons as explained in n.16.

21

for young people. Making it more challenging for teenagers to access tobacco limits their exposure to addictive substances during a critical developmental period, preventing addiction and the associated long-term health consequences. Tobacco use still remains the leading cause of death in the United States.[19] In the last decade, tobacco use among youth has been significant concern in the United States. Young people have become the predominant consumers of e-cigarettes and are addicted to these products. *Id*. The Centers for Disease Control and Prevention advises that youth use of tobacco products in any form (including e-cigarettes) is unsafe. *Id*. Preventing youth use of tobacco products, particularly e-cigarettes, is critical to reducing tobacco use among that group.

Therefore, Plaintiff's request for the total civil penalty of **$443,000** under California Business and Professions Code § 22963(f) is appropriate under the circumstances.

### 3.    Civil monetary penalty under California Business and Professions Code § 17206

The California Attorney General is authorized by California Business and Professions Code § 17206(a) to obtain civil penalties of up to $2,500 for each violation of § 17200. These penalties are "cumulative to each other and to the remedies or penalties available under all other laws of this state." Cal. Bus. & Prof. Code § 17205. In assessing the amount of the civil penalty, the court must consider any one or more of the relevant circumstances presented by any of the parties to the case, including, but not limited to, the following: the nature and seriousness of the misconduct, the number of violations, the persistence of the misconduct, the length of time over which the misconduct occurred, the willfulness of the defendant's misconduct, and the defendant's assets, liabilities, and net worth. *Id*. § 17206(b).

The undisputed material facts show that despite the comprehensive regime regulating the sale of tobacco products through the internet, Defendants violated nearly every state and federal law applicable to their transactions. Ejuicesteals sold tobacco products through its website, www.ejuicesteals.com, from 2016 through December 2024. UMF ¶¶2, 4. On two occasions, in

---

[19] CDC, *E-Cigarette Use Among Youth* (October 17, 2024), https://www.cdc.gov/tobacco/e-cigarettes/youth.html, last accessed September 8, 2025.

22

June 2019 and June 2020, the State warned Ejuicesteals that it was selling and shipping tobacco products to California customers in violation of state and federal laws and demanded compliance. *See* Compl. Ex. B, C; Ans. ¶¶34-35, ECF 8. Ejuicesteals was specifically informed that it required a tobacco retailer license for *each* retail location for sales of tobacco products. *Id*. On July 31, 2020, the FDA informed Defendants that federal law prohibits sales and delivery of adulterated tobacco products. Compl. Ex. F; Ans. 41, ECF No. 8. In August 2020, Defendants represented through their counsel that they intend "to absolutely stay in compliance with all federal and state regulations". Compl, Ex. G, ECF No. 1; Ans. ¶42, ECF No. 8. On September 28, 2020, Ejuicesteals again represented that it "decided to cease all sales in California" and that it would "inform the Department prior to the commencement of any activity in California". Hanna Dep. Ex. 14.

Ejuicesteals did not abide by its assurances and knowingly continued to make sales and deliveries of tobacco products to California customers from unlicensed California locations until August 30, 2023. Ejuicesteals also shipped tobacco products to California customers using USPS while knowing that such shipments were prohibited under federal law. UMF ¶80. Ejuicesteals did not use the method of mailing that required a signature from a person of 21 years or older to ensure that tobacco products are not delivered to underage persons. UMF ¶¶28, 47, 95-99. While Ejuicesteals collected CECET from California customers, it failed to timely remit it to the State and failed to file timely CECET returns. UMF ¶¶56-65. All of Defendants' sales and deliveries of tobacco products to California customers during the period February 2019 through December 2023 were made in violations of state and federal laws. UMF ¶¶106-107.

In line with Plaintiff's assessment of penalties and the mitigating factors in this case as discussed above, Plaintiff used a conservative approach to calculate penalties authorized under California Business and Professions Code § 17206(a). Plaintiff applied $2,500 penalty amount to each month of Ejuicesteals' unlicensed operations during the period January 2019 to August 2023 made in violation of California Revenue and Taxation Code § 30101.7(d)(2). Xiomara Decl. ¶57, Xiomara Decl. Ex. 10. This resulted in the civil penalty totaling **$100,000**. *Id*. Plaintiff also applied $2,500 penalty amount to each unlawful sale to underage California customer Ejuicesteals

23

made in violation of California Business and Professions Code § 22963(a). Thorburn Decl. 60, Thorburn Decl. Ex. 9. This resulted in the civil penalty totaling **$70,000**. *Id.*

Therefore, Plaintiff requests a total civil penalty of **$170,000** under California Business and Professions Code § 17206(a) or a civil monetary penalty in an amount the Court deems just and appropriate.

## B.  Permanent Injunction

Plaintiff seeks a permanent injunction against both Defendants Ejuicesteals and Remon Hanna. Defendant Remon Hanna was Ejuicesteals' Chief Executive Officer, Chief Financial Officer, Secretary, and Director and was the only person in control of all Ejuicesteals' operations since August 2019. UMF ¶¶5-6. Mr. Hanna was responsible for all operations of Ejuicesteals, including purchasing products, processing shipments, paying taxes, obtaining licenses, legal compliance, customer service, entering into agreements, hiring employees, managing employees, providing instructions to employees, and terminating employment. UMF ¶7. On two occasions, in June 2019 and June 2020, Mr. Hanna was on notice of California's licensing requirements and violations. Compl. Ex. B, ECF No. 1, Ans. ¶34, ECF No. 8. As of October 2021, Mr. Hanna was aware that it was unlawful to ship and deliver e-cigarettes using USPS. UMF ¶80. And, as of July 31, 2020, Mr. Hanna was aware that federal law prohibits sale and delivery of adulterated tobacco products. Compl. Ex. F; Ans. 41, ECF No. 8. While having knowledge of unlawful conduct and being the only person in control of all Ejuicesteals' operations, Ejuicesteals continued to make delivery sales in violation of the PACT Act and state laws, as discussed above. Therefore, Mr. Hanna was in an active concert and participation with Ejuicesteals in violations of state and federal laws and should be subject to injunction. *See Regal Knitwear Co. v. N.L.R.B.*, 324 U.S. 9, 14 ("a decree of injunction not only binds the parties defendant but also those identified with them in interest, in 'privity' with them, represented by them or subject to their control"); *see also* Fed. R. Civ. P. 65(d)(2) (an injunction binds the parties; the parties' officers, agents, servants, employees, and attorneys; and persons in active concert or participation with the parties and the parties' officers, agents, servants, employees, and attorneys).

/ / /

24

**1.      Permanent injunction prohibiting PACT Act violations**

A State, through its attorney general, may bring an action in a U. S. district court to prevent and restrain violations of the PACT Act, 15 U.S.C. §§ 375-378, and to obtain any other appropriate relief, including civil penalties, money damages, and injunctive or other equitable relief. 15 U.S.C. § 378(c)(1)(A). In addition, the PACT Act authorizes a state, through its attorney general, to bring a civil action in a U. S. district court to obtain appropriate relief with respect to a violation of 18 U.S.C. § 1716E. 18 U.S.C. § 1716E(h)(1). Appropriate relief includes injunctive and equitable relief for a violation of 18 U.S.C. § 1716E. *Id*.

Equitable relief is also available under the UCL, and it says in part, "any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction." Cal. Bus. & Prof. Code §17203. The court may make such orders or judgments as may be necessary to prevent unfair competition, as defined in California Business and Professions Code §17200. *Id*.

It is settled that an action for an injunction does not become moot merely because the conduct complained of has terminated, if there is a possibility of recurrence, since otherwise the "defendant's [sic] would be free to return to their old ways.'" *F.T.C. v. Affordable Media*, 179 F.3d 1228, 1237 (9th Cir. 1999(citations and italics omitted). Furthermore, past unlawful conduct may be considered in the determination of the likelihood of future violations. *Commodity Futures Trading Comm'n v. Co Petro Mktg. Grp., Inc.*, 502 F. Supp. 806, 818 (C.D. Cal. 1980), aff'd, 680 F.2d 573 (9th Cir. 1982) (*citing Commodity Futures Trading Commission v. Hunt,* 591 F.2d 1211, 1220 (7th Cir.) (1979)). In drawing such an inference from past violations, "the Court should look at the totality of the circumstances, and factors suggesting that the infraction might not have been an isolated occurrence are always relevant." *Id*. (internal quotation marks and citation omitted). In addition, "[w]hen the violation has been predicated upon systematic wrongdoing, rather than an isolated occurrence, a court should be more willing to enjoin future conduct." *Id*.

The evidence submitted with this motion establishes a long-standing pattern of Defendants persistent violations for the entire period of operations. Defendants' violations persisted years after demands from the State for compliance. Defendants made representations of their intent to

25

fully comply with all applicable laws but continued its unlawful conduct. In September 2020, Defendants also represented that they ceased all sales in California and that they will "inform the Department prior to the commencement of any activity in California". Hanna Dep. Ex. 14. Yet, Defendants resumed their sales without providing any notice to the State. In the absence of permanent injunction, Defendants can and likely will resume their wrongful activity again.

Therefore, the State requests the Court impose a permanent injunction restraining Defendants Ejuicesteals and Remon Hanna, their successors, agents, representatives, employees, assigns, and all persons who acted in concert with Defendants, whether acting directly or indirectly, from engaging in any act or practice that violated the PACT Act, 15 U.S.C. §§ 375–378 and 18 U.S.C. § 1716E, California Business and Professions Code § 17200, including a permanent injunction restraining any activity that violates the California Cigarette and Tobacco Products Tax Law, §§ 30001-30483, the California Cigarette and Tobacco Products Licensing Act, §§ 22970–22995, the Healthy Outcomes and Prevention Education Act, Cal. Rev. & Tax. Code § 31000-31008, and the California Stop Tobacco Access to Kids Enforcement Act, Cal. Bus. & Prof. Code §§ 22950-22964.

The State also requests the Court impose a permanent injunction restraining Defendants from engaging in any activity related to delivery sales of tobacco products, as well as a permanent ban on: (1) making sales, offering for sale, giving away, or otherwise engaging in the sale of tobacco products in California and, more broadly, engaging in any ecommerce/online tobacco product sales to California customers; (2) registering, obtaining, operating, or otherwise using or allowing any other domain that may be used to sell, offer for sale, give away, or advertise tobacco products to California customers; (3) serving as officers, agents, employees, consultants, or investors to any person or entity engaged in selling tobacco products to customers located in California through any e-commerce website; (4) using USPS for shipment or delivery of any tobacco product; and (5) receiving, delivering, or proffering for delivery for pay or otherwise adulterated tobacco products in violation of 21 U.S.C. § 331(c).

/ / /

/ / /

26

**CONCLUSION**

For the reasons discussed above, Plaintiff, the People of the State of California, respectfully requests that the Court grant this motion in full. Including imposing civil monetary penalties in the amount of $573,000 under California Revenue and Taxation Code § 30101.7(g), $443,000 under California Business and Professions Code § 22963(f), and $170,000 or an amount this Court deems appropriate under California Business and Professions Code § 17206(a). As well as a permanent injunction against Defendants Ejuicesteals and Remon Hanna, as detailed above, pursuant to 15 U.S.C. § 378(c)(1)(A), U.S.C. § 1716E(h)(1), and Cal. Bus. & Prof. Code § 17203.

Dated:  September 8, 2025                    Respectfully submitted,

ROB BONTA
Attorney General of California
NELI PALMA
Senior Assistant Attorney General
NATALIE S. TORRES
Supervising Deputy Attorney General


*/s/ Lesya N. Kinnamon*

LESYA N. KINNAMON
DAVID C. GOODWIN
TAYLOR ANN WHITTEMORE
Deputy Attorney General
*Attorneys for Plaintiff State of California*

SA2023306126
95654708

27