UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA,<br><br>Plaintiff,<br><br>v.<br><br>EJUICESTEALS.COM, *et al.*,<br><br>Defendants. | Case No. 1:23-cv-01726-KES-CDB<br><br>FINDINGS AND RECOMMENDATIONS TO GRANT IN PART AND DENY IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT<br><br>(Doc. 50)<br><br>**14-Day Deadline** |

Pending before the undersigned[1] is the motion of Plaintiff the People of the State of California ("Plaintiff") for summary judgment, separate statement of undisputed material facts, and request for judicial notice in support thereof, filed on September 8, 2025. (Docs. 50, 50-2, 51). On October 9, 2025, Defendants Ejuicesteals.com ("Ejuicesteals") and Remon Hanna (collectively, "Defendants") filed oppositions to Plaintiff's motion and request for judicial notice and filed a separate statement of disputed facts. (Docs. 64, 64-2, 64-3). On October 20, 2025, Plaintiff filed replies in further support of its motion for summary judgment, its separate statement of undisputed

---

[1] On September 9, 2025, the presiding district judge referred Plaintiff's motion and request for judicial notice to the undersigned for the preparation of findings and recommendations and/or other appropriate action and vacated the noticed hearing on the motion. (Doc. 52).

facts, and its request for judicial notice (Docs. 65, 65-1, 65-4) and Defendants filed objections (Doc. 66) to new evidence and arguments advanced in Plaintiff's reply filings.

**I.      Relevant Background**

      **A.      Relevant Procedural Posture**

On December 14, 2023, Plaintiff initiated this action with the filing of a complaint against Defendants Ejuicesteals and Hanna. (Doc. 1). On August 1, 2025, the Court granted the parties' stipulated request to continue the deadline to file dispositive motions (to September 8, 2025) and associated hearing before the assigned district judge (to October 20, 2025), and relieved Plaintiff of the requirement to meet and confer prior to filing its motion for summary judgment. (Doc. 41). At the parties' request, the Court did not schedule a pre-trial conference or set a trial date. *Id*.

On August 25, 2025, the Court entered a further order on dispositive motion deadlines and Defendants' status report, directing Defendants (then proceeding pro se) to review and comply with this Court's local rules, particularly Local Rule 230, which governs the parties' briefing of Plaintiff's motion for summary judgment. (Doc. 44).

On September 23, 2025, James Joseph Allemand filed a notice of appearance as counsel for Defendants in this action. (Doc. 57). The next day, the Court granted Defendants' requests for substitution of Mr. Allemand as counsel of record. (Docs. 60, 61). On September 25, 2025, the Court granted Defendants' motion extending *nunc pro tunc* time to file a response to Plaintiff's motion for summary judgment. (Doc. 63).

      **B.      Relevant Facts**

The undersigned draws the following facts from Plaintiff's separate statement of undisputed material facts (Doc. 50-2) and from other facts deemed undisputed by Defendants (Doc. 64-2), except where noted. To the extent material disputes exist as raised in the parties' briefing (*see* Docs. 50-2, 64-2), unless otherwise stated, the Court will look to the version most favorable to Defendants as the non-moving party. *See Smith v. City of Hemet*, 394 F.3d 689, 693 (9th Cir. 2005).

///

///

///

1.    Background of Ejuicesteals and Hanna's Involvement

Ejuicesteals was a corporation formed in California that operated through December 2024.[2] (Doc. 50-2, Plaintiff's Statement of Undisputed Material Facts ("PSUMF") ¶ 2).  Ejuicesteals sold tobacco products, including electronic cigarettes ("e-cigarettes"), through its website, www.ejuicesteals.com, which began operation in 2016.  *Id.* ¶¶ 3, 4.  Defendant Hanna was Ejuicesteals' chief executive officer, chief financial officer, secretary, and director.  *Id.* ¶ 5.  Hanna was Ejuicesteals' sole officer, director, and was responsible for all operations since at least August 2019, including purchasing products, processing shipments, paying taxes, obtaining licenses, legal compliance, customer service, entering into agreements, and hiring, managing, instructing, and terminating employees.[3]  *Id.* ¶¶ 6, 7.

2.    Ejuicesteals' California Locations

Ejuicesteals sold and shipped tobacco products to California customers from four California-based locations, including its location at 17911 Skypark Circle, Irvine, California 92614 from September 2018 through August 2019.  *Id.* ¶¶ 8, 9.  Ejuicesteals did not hold a tobacco products retailer license for this location from January 2019 through December 2024.[4]  *Id.* ¶ 10.

---

[2] Although Defendants dispute that the deposition of Defendant Hanna "says differently[,]" Hanna's testimony that he assumes Ejuicesteals stopped being active at the end of December 2024 does not raise a genuine dispute of fact.  (Doc. 64-2 ¶ 2) (citing Doc. 50-16, Excerpts from Hanna Deposition ("Hanna Depo.") at 24).

[3] Defendants' dispute that Hanna "had several persons helping him" including a friend named "Andrew Dean" is not material to the undersigned's decision.  *See* (Doc. 64-2 ¶¶ 6, 7).

[4] Defendants dispute this fact generally, citing only to their objections to the declaration of James Dahlen on which Plaintiff relies in support of this fact.  *See* (Doc. 64-2 ¶ 10); (Doc. 64-6, Objection to Declaration of James Dahlen ("Defs. Obj. Dahlen Decl.")).  In its objection, Defendants assert that the declaration is inadmissible under several grounds, including for a lack of personal knowledge, hearsay, authentication, improper expert testimony, legal conclusions, speculation, relevance, prejudice, confusion, or waste of time, and improper use of summary judgment evidence.

"[O]bjections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself[.] … A court can award summary judgment only when there is no genuine dispute of *material* fact. It cannot rely on irrelevant facts, and thus relevance objections are redundant." *Burch v. Regents of Univ. of California*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006) (emphasis original); accord *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 665 (9th Cir. 2021).

Ejuicesteals also sold and shipped tobacco products from its location at 51 Peters Canyon Road, Irvine, from June 2017 through February 2020. *Id.* ¶¶ 11, 12. Ejuicesteals did not hold a tobacco products retailer license for this location from January 2019 through December 2024. *Id.* ¶ 13.

Ejuicesteals also sold and shipped tobacco products from its location at 2841 Unicorn Road, Suite 102, Bakersfield, from August 2020 through January 2022. *Id.* ¶¶ 14, 15. Ejuicesteals did not hold a tobacco products retailer license for this location from January 2019 through December 2024. *Id.* ¶ 16.

Ejuicesteals also sold and shipped tobacco products from its location at 10010 Rosedale Highway, Unit 2, Bakersfield, from May 2021 through December 2024. *Id.* ¶¶ 17, 18. Ejuicesteals

---

Accordingly, because Defendants' objections to evidence on these grounds (*i.e.*, Doc. 64-6; *see also* Docs. 64-4, 64-5, 64-7, 64-8, 64-9, 64-10, 64-11) are duplicative and improper on a motion for summary judgment, they are overruled. *E.g., U.S. E.E.O.C. v. Placer ARC*, 114 F. Supp. 3d 1048, 1052 (E.D. Cal. 2015); *Yellowcake, Inc. v. Hyphy Music, Inc.*, No. 1:20-CV-00988-JLT-BAM, 2025 WL 2196382, at *6 (E.D. Cal. Aug. 1, 2025); *F.D.I.C. v. Varrasso*, No. CIV. 2:11–2628 WBS CKD, 2013 WL 5493402, at *3 (E.D. Cal. Oct. 1, 2013).

Separately, unless noted herein, Defendants' objections based on hearsay (Doc. 64-6) are overruled because the undersigned has determined that, even if the subject evidence constitutes hearsay, it is of a type that could be presented in admissible form at trial. *See Sandoval*, 985 F.3d at 666; *e.g., Fraser v. Goodale*, 342 F.3d 1032, 1037 (9th Cir. 2003) ("Because the diary's contents could be presented in an admissible form at trial, we may consider the diary's contents in the Bank's summary judgment motion.").

Moreover, Defendants' objections based on authentication are unavailing. Mr. Dahlen's declaration does not seek to introduce any *record evidence*, only the introduction of his *testimony* that the results of a search of official licensing records confirmed that Defendants have not held a tobacco products retailer license during the period at the location at issue. *See* (Doc. 50-8, Declaration of James Dahlen ("Dahlen Decl.") ¶ 6). *See Orr v. Bank of Am.*, *NT *& SA*, 285 F.3d 764, 773-74 (9th Cir. 2002) ("In a summary judgment motion, *documents* authenticated through personal knowledge must be 'attached to an affidavit that meets the requirements of [Fed. R. Civ. P.] 56(e) and the affiant must be a person through whom *the exhibits* could be admitted into evidence.'") (citing *Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987)) (emphasis added).

Therefore, Defendants' objection to the declaration of Mr. Dahlen, and their generalized disputed facts based thereon (Doc. 64-2 ¶¶ 13, 16, 19), are overruled.

4

did not hold a tobacco products retailer license for this location from January 2019 through August 2023.[5] *Id.* ¶ 19.

### 3.     Plaintiff's Undercover Purchases in July 2023

On July 12, 2023, California Department of Justice ("DOJ") special agent Michael Kutz visited Defendants' website to make an undercover purchase of tobacco products using an undercover and fictitious identity, "Jeffrey Oneill," supported with a valid California driver's license, and an undercover email account (vaportwo1735@gmail.com), to place an order. *Id.* ¶¶ 20, 21.  He paid for the order with a pre-paid Visa debit credit card that was not associated with his undercover identity or with any other person's personally identifying information. *Id.* ¶ 22.  Agent Kutz successfully placed his order on the website for flavored disposable e-cigarette devices for Flum Ultra Disposable 1800 Puffs (violet ice), Elf Bar Disposables 5000 Puffs (black winter flavor), and Candy Barz Disposable 1500 Puffs (mango ice flavor), to be delivered to Jeffrey Oneill at 1735 E Street, Fresno. *Id.* ¶ 23.

That same day, Agent Kutz received an email from info@ejuicesteals.com in his undercover email account confirming the order.[6] *Id.* ¶ 24.  The email included an order confirmation number and noted the shipping method as "Express Shipping + Adult Signature (2-3 days)." It did not include any statement regarding the "California Electronic Cigarette Excise Tax" or state the

---

[5] As discussed *infra*-Section IV.B.4, Defendants' proffer of Exhibit B to the Hanna declaration showing that Defendants were issued a valid CDTFA license for this location from August 30, 2023, to January 30, 2025, does not raise a genuine dispute regarding this fact. *See* Hanna Decl. at Ex. B.

[6] Defendants dispute this fact based only on their objection to the declaration of Michael Kutz on which Plaintiff relies in support of this fact. *See* (Doc. 64-2 ¶ 25); (Doc. 64-9, Objection to Declaration of Michael Kutz ("Defs. Obj. Kutz Decl.")).  Given Defendants' objections to Plaintiff's evidence (*i.e.*, Docs. 64-4, 64-5, 64-7, 64-8, 64-9, 64-10, 64-11) rely on improper grounds as discussed *supra* (*see* n.4), those objections are overruled.  *See Sandoval*, 985 F.3d at 666; *Burch*, 433 F. Supp. 2d at 1119.

Separately, Defendants' objection to the declarations of Mr. Kutz and Suzanne Barton on authentication grounds is unavailing.  *See* (Doc. 64-7).  The declarations each satisfy Rule 56(e) and, taken together, dispel any question about the chain of custody.  *See Orr*, 285 F.3d at 774 n. 9; Fed. R. Civ. P. 56(e); (Doc. 50-11, Declaration of Suzanne Barton ("Barton Decl.") ¶¶ 3-9). Therefore, Defendants' disputes based on their objections to the declarations of Kutz and Barton (Doc. 64-2 ¶¶ 25-39) are overruled.

amount of California electronic cigarette excise tax collected. *Id.* Agent Kutz received another email in his undercover email account from tracking@shipstation.com stating the following: "Dear Jeffrey Oneill, Thank you for your order from EJUICESTEALS! We wanted to let you know that your order (#94804) was shipped via USPS, USPS First Class Mail on 7/12/2023. You can track your package at any time using the link below." The email included the description of products in the shipment and a shipment tracking number. *Id.* ¶ 25. Agent Kutz did not receive any telephone call from Ejuicesteals. *Id.* ¶ 26.

On July 14, 2023, a U.S. Postal Service (USPS) delivery delivered a package to DOJ crime analyst Suzanne Barton that was addressed from "Adam Johnson 10010 Rosedale Hwy, Unit 3, Bakersfield, CA 93312" to "Jeffrey Oneill 1735 E ST Fresno, CA 93706." *Id.* ¶ 27. At the time of delivery, the USPS delivery person handed the package to Barton without requesting her signature and without requesting or verifying her personal identification. *Id.* ¶ 28. Immediately after the receipt of the package, Barton informed Kutz of the delivery of the package and did not open the package nor make any changes to its labels before she placed the package on Kutz's desk located in a secured office space that same day. *Id.* ¶¶ 29-31.

On July 17, 2023, Kutz saw the package on his desk in unopened form and completely sealed on all sides with all the original labels attached. The package was marked "USPS Ground AdvantageTM," included a USPS tracking number, and stamps dated July 12, 2023. *Id.* ¶ 32. The package did not include any writing or label containing the following: (1) "PAYMENT OF ALL APPLICABLE EXCISE TAXES, AND COMPLIANCE WITH APPLICABLE LICENSING AND TAX-STAMPING OBLIGATIONS." (2) "CONTAINS TOBACCO PRODUCTS: SIGNATURE OF PERSON 21 YEARS OF AGE OR OLDER REQUIRED FOR DELIVERY." *Id.* ¶¶ 33-34. The package also did not include any other labels or writing identifying that it contains tobacco products. *Id.* ¶ 35. Agent Kutz opened and found inside the package the e-cigarettes he had ordered. *Id.* ¶ 36. The package also included a packing slip that listed the same address information, order number, date of July 17, 2023, and a description of items ordered. *Id.* ¶ 37. The packing slip did not include the statement "California Electronic Cigarette Excise Tax" and did not

6

separately state the amount of California electronic cigarette excise tax collected. *Id.* ¶ 38. The package did not contain include any other documents. *Id.* ¶ 39.

4.    Plaintiff's Undercover Purchases in October 2023

On October 3, 2023, DOJ special agent Christopher Galpin visited Defendants' website to make an undercover purchase of tobacco products using the same undercover and fictitious identity ("Jeffrey Oneill"), driver's license, and email account as Agent Kutz had used, specifically for a flavored disposable e-cigarette device, Truly Bar Elf Bar Disposable 5000 Puffs (watermelon grape aloe).[7] *Id.* ¶¶ 40-42. Agent Galpin paid for the order with a pre-paid Visa debit card in the same manner as Agent Kutz. *Id.* ¶ 43. That same day, Agent Galpin received emails confirming his order and providing tracking information akin to the emails Agent Kutz received. *Id.* ¶¶ 44-45. Galpin did not receive any telephone calls from Defendants. *Id.* ¶ 46.

On October 5, 2023, administrative specialist Maria Rojas transferred the package to Agent Galpin completely sealed on all sides with all the original labels attached. Agent Galpin learned that the USPS delivery person delivered the package to Ms. Rojas and that she did not have to sign for the delivery of the package. *Id.* ¶ 47. Galpin took possession of the package. *Id.* ¶ 48. The package did not include any writing or labels regarding any federal or state compliance obligations, age requirements for delivery, or information identifying that it contains tobacco products similar to the package Agent Kutz ordered and received. *Id.* ¶¶ 49-51. Galpin opened the package containing only the e-cigarette as ordered and a packing slip with the same kind of address, order number, and item description information as the package Kutz received that likewise did not include any statement regarding the "California Electronic Cigarette Excise Tax" and did not state the amount of California electronic cigarette excise tax collected. *Id.* ¶¶ 52-54.

///

---

[7] Defendants dispute these facts based only on their objection to the declaration of Agent Galpin. (Doc. 64-2 ¶¶ 40-54); *see* (Doc. 64-8). Defendants' objection based on Galpin's purported failure to provide a phone number when he made the undercover purchase, without citation to any record evidence, does not raise a dispute of material fact whether Defendant had the opportunity to comply with its statutory requirement under Cal. Bus. & Prof. Code § 22963(b)(3) to make a telephone call to confirm the order prior to shipping the tobacco products. Therefore, and for the same reasons addressed *supra*, Defendants' objection to this declaration, and the purported disputes based thereon, are overruled.

5.    California Electronic Cigarette Tax Reporting and Payment

Ejuicesteals collected California Electronic Cigarette Tax ("CECET") from California customers, and began collecting CECET when it became effective on July 1, 2022. *Id.* ¶ 55. Ejuicesteals did not file a CECET return with the California Department of Tax and Fee Administration ("CDTFA") by the following deadlines for the following periods:

(1) on or before October 31, 2022, for the period July 1, 2022 through September 30, 2022;

(2) on or before January 30, 2023, for the period October 1, 2022 through December 31, 2022;

(3) on or before April 30, 2023, for the period January 1, 2023 through March 31, 2023;

(4) on or before July 31, 2023, for the period March 1, 2023 through June 30, 2023;

(5) on or before October 31, 2023, for the period July 1, 2023 through September 30, 2023;

(6) on or before October 31, 2022, for the period July 1, 2022 through September 30, 2022;

(7) on or before January 30, 2023, for the period October 1, 2022 through December 31, 2022;

(8) on or before April 30, 2023, for the period January 1, 2023 through March 31, 2023;

(9) on or before July 31, 2023, for the period March 1, 2023 through June 30, 2023; and

(10) on or before October 31, 2023, for the period July 1, 2023 through September 30, 2023.[8]

*Id.* ¶¶ 56-65. Ejuicesteals did not include a statement regarding CECT and did not separately state the amount of CECET collected in receipts or other documents provided to California customers during the period July 2022 through December 2023.[9] *Id.* ¶ 66.

///

---

[8] Defendants' disputes based on their objection to Mr. Dahlen's declaration (Doc. 64-2 ¶¶ 56-65) are overruled for the same reasons considered *supra*.

[9] Defendants' disputes concerning these facts based on their objections to the declarations of Kutz and Galpin are overruled for the same reasons considered *supra*. Additionally, Defendants' assertion that Hanna's deposition testimony that he started to send "separate invoices with a text included on the invoice inside the package … from the end of 2023" fails to create a genuine dispute of fact that Ejuicesteals did not include the CECET statement or identify the amount of CECET collected in receipts to California customers during the relevant period. *See* Kutz Decl. ¶¶ 9, 21; Galpin Decl. ¶¶ 9, 19.

### 6.    Ejuicesteals' Telephone Calls to California Customers

Throughout 2019, Ejuicesteals did not make telephone calls after 5:00 p.m. to California customers who purchased tobacco products from its website confirming the order prior to shipping the tobacco products. *Id.* ¶ 67.

### 7.    Ejuicesteals' Age Verification Using BlueCheck, Inc.

Ejuicesteals used BlueCheck Inc. ("BlueCheck") to verify the age of California customers who purchased tobacco products through the ejuicesteals.com website, including for the period between January 2019 and September 2020. *Id.* ¶¶ 68, 69. BlueCheck attempted to verify the age of Ejuicesteals' California customers after those customers placed orders on the website by matching the person's name and address to publicly available databases using proprietary algorithms/protocols. *Id.* ¶¶ 70-71. At the completion of the age verification process, BlueCheck returned a response to Ejuicesteals whether the person who placed an order could be verified to be the age required by Ejuicesteals. *Id.* ¶ 72. Persons who could not be verified were labeled by BlueCheck to have "failed age verification." *Id.* ¶ 73.

Through January 9, 2020, BlueCheck used below 21 as the minimum age to verify that Ejuicesteals' customers were of legal age to purchase tobacco products. *Id.* ¶ 74. BlueCheck maintained control over the age verification data for Ejuicesteals' customers. *Id.* ¶ 75.

BlueCheck age verification data reflects 3,785 California customers placed orders on Ejuicesteals' website before BlueCheck attempted to verify their age during the period February 19, 2019 through June 7, 2020 (including 99 orders between January 7, 2020, and June 7, 2020).[10]

---

[10] Defendants dispute these facts based on their objection to the declaration of Xiomara Thorburn. (Doc. 64-2 ¶¶ 76-78, 91-105); *see* (Doc. 64-5). Defendants' objection based on authentication issues are unavailing as Ms. Thorburn's declaration provides "evidence sufficient to support a finding that the matter in question is what [she] claims" and she adequately explains how the exhibits at issue were created and identifies the sources upon which they rely. *Orr*, 285 F.3d at 773 (citing Fed. R. Civ. P. 901(a)). "[T]he rule requires only that the court admit evidence if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification." *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 454 F. Supp. 966, 972 (C.D. Cal. 2006) (citing *United States v. Tank*, 200 F.3d 627, 630 (9th Cir. 2000)). Because Ms. Thorburn's declaration, summary analysis of evidence, and exhibits thereto relied on data obtained from the production of Defendants and Defendants' vendors during discovery, and Defendants do not proffer any evidence that disputes the veracity of Ms. Thorburn's analysis, the authentication requirement is met. *Id.* ("[I]n *In re Homestore.com, Inc. Securities Litigation*, 347 F. Supp. 2d 769,

*Id.* ¶¶ 76-77. The data also shows that 47 California customers placed orders on Ejuicesteals' website but later failed age verification by BlueCheck because those customers were "underage."[11] *Id.* ¶ 78.

8.    Ejuicesteals' Shipment and Delivery of Tobacco Products via USPS

Ejuicesteals used USPS to ship and deliver tobacco products to California customers during the period January 2019 through December 31, 2023. *Id.* ¶ 79. As of at least October 2021, Ejuicesteals and Hanna were aware that it was unlawful to use USPS to ship and deliver tobacco products. *Id.* ¶ 80.

Ejuicesteals used Auctane LLC ("Auctane") services, including Auctane's subsidiaries ShipStation and Stamps.com, to create labels Ejuicesteals attached to packages containing tobacco products shipped to its customers, to purchase package postage, and to purchase shipment and delivery services through USPS. *Id.* ¶¶ 81-83. Ejuicesteals' procedure for verifying its customers receiving the package containing tobacco products were 21 years or older was through purchasing a package delivery service that included an adult signature requirement through Auctane. *Id.* ¶ 84.

_____

781 (C.D. Cal. 2004), the court held that the authentication requirement was met because the documents in question were produced during discovery and were offered by the party opponent.").

Separately, Defendants' objections based on improper expert testimony are without merit. Ms. Thorburn's declaration consists of summary evidence derived from materials that are admissible and were produced by Defendants and its vendors during discovery. *See United States v. Rizk*, 660 F.3d 1125, 1130-31 (9th Cir. 2011) ("Rule 1006 permits admission of summaries based on voluminous records that cannot readily be presented in evidence to a jury and comprehended. It is essential that the underlying records from which the summaries are made be admissible in evidence, and available to the opposing party for inspection, but the underlying evidence does not itself have to be admitted in evidence and presented to the jury."). Therefore, and for the reasons considered above, Defendants' objection to Ms. Thorburn's declaration, and factual disputes based thereon, are overruled.

[11] Defendants' do not dispute this fact but assert that the 47 alleged transfers were declined after BlueCheck failed the age verification. (Doc. 64-2 ¶ 78). Defendants cite to Exhibit A of Defendant Hanna's declaration to show that the transfers were not sent and that the assertions made in Ms. Thorburn's declaration are inaccurate and unsupported. *Id.*; *see* (Doc. 64-1, Declaration of Remon Hanna ("Hanna Decl.") Ex. A). However, as discussed *infra*-Section IV.B.2, the undersigned finds that Defendants' proffered evidence at Exhibit A to the Hanna declaration is inadmissible and not properly considered on summary judgment as evidence improperly withheld from production in discovery. Therefore, without any evidence in support, Defendants fail to raise a genuine dispute as to whether these 47 sales were actually made.

10

The price for the method of delivery with the adult signature service was higher than the price for other methods of package delivery services. *Id.* ¶ 86. Purchasing the adult signature package delivery service was the only method Ejuicesteals used for verifying that the customers receiving the package containing tobacco products were 21 years or older. *Id.* ¶ 87. Hanna had access to Ejuicesteals' Auctane package shipments data at the time of Ejuicesteals business operations, and he did not check the data to verify whether Ejuicesteals' employees were purchasing the adult signature package delivery service for packages Ejuicesteals shipped to its customers. *Id.* ¶¶ 88, 89.

Auctane provided package labeling and postage purchase services to Defendants under the account/meter number 10551455 starting in April 2019, and under the account/meter number 10702396 starting in July 2019.[12] *Id.* ¶ 90.

Auctane shipment data for Ejuicesteals reflect 671 shipments to California customers using USPS addressed from 17911 Skypark Circle, Irvine, during the period between April 11, 2019 and August 28, 2019. *Id.* ¶ 91. None of these shipments included "Adult Signature" delivery confirmation, but instead, "eDelivery Conf." *Id.* ¶ 92.

Auctane data also shows 962 shipments to California customers using USPS addressed from 51 Peters Canyon Road, Irvine, during the period between August 26, 2019, and February 25, 2020, and none of these shipments included "Adult Signature" delivery confirmation, but instead, "eDelivery Conf." *Id.* ¶¶ 93, 94.

Auctane data also shows 296 shipments to California customers using USPS addressed from 2841 Unicorn Rd, STE 102, Bakersfield, during the period between September 6, 2021 and January 28, 2022, and none of these shipments included "Adult Signature" delivery confirmation. *Id.* ¶¶

---

[12] Defendants dispute these facts based only on their objection to the declaration of Giovanni Orlotegui. (Doc. 64-2 ¶ 90); *see id*. ¶¶ 81-83; (Doc. 64-11). Defendants' objections based on authentication are without merit as the exhibits and ESI attached to the declaration are business records of Auctane, the authenticity of which Mr. Orlotegui, as the duly authorized custodian of records of Acutane, could establish at trial. *See Orr*, 285 F.3d at 774; Fed. R. Evid. 902. Defendants' objections based on improper expert testimony are unavailing as Mr. Orlotegui does not proffer any opinion but merely attests to facts based on his personal knowledge regarding Auctane's services. *See* Fed. R. Evid. 702. Therefore, Defendants' objections to this declaration, and factual disputes based thereon, are overruled.

95, 96. The data shows that of these shipments, 218 included "eDelivery Conf" and 86 included "eSignature Conf." *Id.* ¶ 96.

Auctane data also shows 3,635 shipments to California customers using USPS addressed from 10010 Rosedale Hwy, Unit 3, Bakersfield, during the period between January 29, 2022, and April 22, 2024, and of these shipments, 3,577 included "eDelivery Conf" confirmation, and 58 included "Adult Sig Required" delivery confirmation. *Id.* ¶¶ 97-99.

Ejuicesteals produced package shipment data showing 3,801 shipments to California customers using USPS during the period November 8, 2021, though December 30, 2023. *Id.* ¶ 100. Of these shipments, 56 included "Adult Signature" confirmation. *Id.* ¶ 101. Ejuicesteals' average cost per USPS shipment with the "Adult Signature" confirmation was $18.77. *Id.* ¶ 102

Ejuicesteals' package shipment data shows 3,745 shipments to California customers using USPS included "Delivery" confirmation during the period between November 8, 2021, and December 30, 2023. *Id.* ¶ 103. Ejuicesteals' average cost per USPS shipment with the "Delivery" confirmation was $8.04. *Id.* ¶ 104.

Ejuicesteals' average cost per USPS shipment with the "Adult Signature" confirmation service was $10.73, equivalent to 57% higher than the cost for USPS shipments with the "Delivery" confirmation service. *Id.* ¶ 105.

9.    Ejuicesteals' Sales of Tobacco Products Not Approved by the FDA

None of the tobacco products Ejuicesteals sold to California consumers was on the list of tobacco products that received an order from the federal Food and Drug Administration ("FDA") pursuant to 21 U.S.C. § 387j(c)(1)(A)(1). *Id.* ¶ 106.

The following e-cigarettes—Flum Ultra Disposable 1800 Puffs (violet ice flavor), Elf Bar Disposables 5000 Puffs (black winter flavor), Candy Barz Disposable 1500 Puffs (mango ice flavor), and Truly Bar Elf Bar Disposable 5000 Puffs (watermelon grape aloe)—were not on the FDA list of e-cigarettes authorized for sale in the United States. *Id.* ¶ 107.

**II.    Governing Authority**

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Washington*

12

*Mutual Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1422, 1436 (9th Cir. 1987).

On summary judgment, each party's position must be supported by: (1) citing to particular portions of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. *See* Fed. R. Civ. P. 56(c)(1). The court may consider other materials in the record not cited to by the parties, but it is not required to do so. *See* Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001). Furthermore, "[a]t summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial." *Nevada Dep't of Corr v. Greene*, 648 F.3d 1014, 1019 (9th Cir. 2011) (citations and internal quotations omitted). The focus is on the admissibility of the evidence's contents rather than its form. *Fonseca v. Sysco Food Servs. of Arizona, Inc.*, 374 F.3d 840, 846 (9th Cir. 2004).

"The moving party initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party meets this initial burden, the burden then shifts to the non-moving party "to designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d at 387 (citing *Celotex Corp.,* 477 U.S. at 323). The non-moving party must "show more than the mere existence of a scintilla of evidence." *Id.* (citing *Anderson,* 477 U.S. at 252). However, the non-moving party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to

require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation and citation omitted).

"[A] court ruling on a motion for summary judgment may not engage in credibility determinations or the weighing of evidence." *Manley v. Rowley,* 847 F.3d 705, 711 (9th Cir. 2017) (citation omitted). The evidence must be viewed "in the light most favorable to the nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party. *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 772 (9th Cir. 2002); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

### III.   Plaintiff's Request for Judicial Notice

Plaintiff requests the Court judicially notice that the following e-cigarettes were not approved by the U.S. Food and Drug Administration ("FDA") for sale in the United States: (1) Flum Ultra Disposable 1800 Puffs (violet ice flavor); (2) Elf Bar Disposables 5000 Puffs (black winter flavor); (3) Candy Barz Disposable 1500 Puffs (mango ice flavor); and (4) Truly Bar Elf Bar Disposable 5000 Puffs (watermelon grape aloe). (Doc. 51 at 1-2). Plaintiff contends these facts are appropriately noticeable as they are not subject to reasonable dispute and are capable of accurate determination by resort to sources whose accuracy cannot reasonably be questioned, to wit, the websites of the FDA and Department of Health and Human Services ("HHS"). *Id.* at 2-3. Plaintiff attaches the list of e-cigarettes the FDA has authorized for sale in the United States, which was published on the HHS official government website and is current through August 2023. *Id.* at 3; *see* (Doc. 51-2, Declaration of Leysa Kinnamon ("Kinnamon Decl.") at Ex. A). Plaintiff also attaches the same list current through July 2025, as well as the list of "Premarket Tobacco Products Granted Orders" identifying certain tobacco products the FDA authorized to be marketed in the United States. *See* Kinnamon Decl. at Exs. B, C.

Defendants oppose Plaintiff's request for judicial notice, arguing that it fails to meet the requirements of Federal Rule of Evidence 201 and relies on improper grounds for judicial notice. (Doc. 64-3 at 2). Specifically, Defendants argue that "[i]t is possible that the products in question

14

are under review, have been approved but not yet updated on the list, or are otherwise omitted due to administrative error." *Id.* at 2-3.

Plaintiff contends in reply that the FDA's website maintains a database for tobacco products that may be legally marketed and provides a printable flyer of authorized e-cigarettes that may be lawfully sold in the United States. (Doc. 65-4 at 2). Plaintiff attaches to its filing copies of the FDA's flyers, updated as of August 2023 and July 2025, as well as copies of the list of FDA's "Premarket Tobacco Products Granted Order" identifying certain tobacco products the FDA authorized to be marketed in the United States. *Id.*; *see* (Doc. 65-5, Declaration of Lesya Kinnamon ("Kinnamon Reply Decl.") at Exs. A-C). The FDA flyers include the following: "As of [Aug. 2023 or July 2025] these are the only e-cigarettes authorized to be sold in the U.S." *See* Kinnamon Reply Decl. at Exs. A, B.

Plaintiff's proffered excerpts of a government website are suitable for judicial notice as a matter of public record that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *see Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001) ("a court may take judicial notice of matters of public record."); *Daniels-Hall v. National Edu. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010) ("It is appropriate to take judicial notice of this information, as it was made publicly available by government entities. . . and neither party disputes the authenticity of the web sites or the accuracy of the information displayed [] therein."); *Paralyzed Veterans of Am. v. McPherson*, No. 6-4670, 2008 WL 4183981, at *5 (N.D. Cal. Sept. 8, 2008) ("Information on government agency websites [has] often been treated as proper subjects for judicial notice."); *see, e.g., In re Amgen Inc. Sec. Litig.*, 544 F. Supp. 2d 1009, 1023-24 (C.D. Cal. 2008) (taking judicial notice of drug labels from FDA's website); *County of Santa Clara v. Astra USA, Inc.*, 401 F. Supp. 2d 1022, 1024 (N.D. Cal. 2005) (taking judicial notice of information posted on a Department of Health and Human Services web site); *U.S. ex rel. Modglin v. DJO Glob. Inc.*, 48 F. Supp. 3d 1362, 1381–82 (C.D. Cal. 2014) (taking judicial notice of documents from the FDA's website); *Rice v. Kimberly-Clark Corp.*, No. 2:21-cv-01519-DAD-KJN, 2022 WL 16804522, at *3 (E.D. Cal. Nov. 8, 2022) (same). Therefore, the undersigned will recommend that Plaintiff's request for judicial notice be granted. The undersigned identifies below

facts within the proffered government website it concludes may be "accurately and readily determinable" and subject to judicial notice.  *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018); *see EVO Brands, LLC v. Al Khalifa Grp., LLC*, 657 F. Supp. 3d 1312, 1322 (C.D. Cal. 2023) ("The Court … takes judicial notice of the contents of the contents foregoing website, but does not take notice that the contents of the website are true.").

**IV.      Discussion**

In the complaint, Plaintiff asserts five causes of action: (1) violations of the PACT Act (18 U.S.C. § 1716E); (2) violations of the PACT Act (15 U.S.C. §§ 375-378); (3) violations of Delivery Sales Provisions of the California Cigarette and Tobacco Products Tax Law (Cal. Rev. & Tax. Code § 30101.7); (4) violations of the STAKE Act (Cal. Bus. & Prof. Code §§ 22950-22964); and (5) violations of the California Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code § 17200).  *See* (Doc. 1 at 16-26).

Plaintiff moves for summary judgment on each of its claims against Defendants, asserting the undisputed facts and evidence show that Defendants violated the federal and state statutes identified in the complaint because Defendants unlawfully sold age-restricted tobacco products to California customers through their website, made delivery sales to California customers without complying with tobacco-related licensing and tax laws, failed to comply with age-verification laws, failed to adhere to tobacco-related shipping laws, and unlawfully used the USPS to ship their products.  (Doc. 50 at 2); (Doc. 50-1 at 7).  Plaintiff further seeks the Court enter a permanent injunction and assess civil penalties totaling $1,186,000.00 against Defendants.  (Doc. 50-1 at 7).

Defendants oppose Plaintiff's motion for summary judgment, asserting that the motion is "procedurally defective" under Federal Rule of Civil Procedure 56(a) for failure to specify which claims or defenses, if any, are subject to summary adjudication.  (Doc. 64 at 7-8).  Defendants further contend that Plaintiff's prayer for permanent injunctive relief is not properly before the Court because injunctive relief requires a separate motion under Rule 65, supported by evidence and argument demonstrating irreparable harm, the inadequacy of legal remedies, and the balance of equities.  *Id.* at 8. On the merits, Defendants argue Plaintiff's motion should be denied because genuine disputes of material fact exist with respect to the following subjects: (1) that age

16

verification data from BlueCheck shows 47 California customers failed age verification; (2) that Ejuicesteals operated through December 2024; and (3) that Defendants failed to obtain the necessary licenses required for their operations. *See id.* at 8-15.

The undersigned first addresses Defendants' arguments regarding purported procedural defects before addressing whether Defendants have raised any genuine disputes of material fact that would preclude granting summary judgment.

### A. Plaintiff's Motion and Request for Permanent Injunction Are Not Procedurally Improper

#### 1. Analysis – Rule 56 Summary Adjudication

Under Rule 56(a), "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The standard that applies to a motion for summary adjudication is the same as that which applies to a motion for summary judgment." *Norcal Gold, Inc. v. Laubly*, 543 F. Supp. 2d 1132, 1135-36 (E.D. Cal. 2008) (citing Fed. R. Civ. P. 56(a); *Mora v. Chem-Tronics, Inc.*, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998)).

Here, Defendants' argument that Plaintiff's motion failed to specify which of its claims or defenses, if any, are subject to summary adjudication such that the motion is procedurally defective is without merit. Plaintiff asserts in its motion that it "moves for entry of judgment on each of its claims[,]" *i.e.*, the five causes of action enumerated in its complaint against Defendants. (Doc. 50-1 at 7). Indeed, Plaintiff sets forth in its notice that it moves for summary judgment against Defendants based on alleged violations of state and federal statutes that coincide with the causes of action and allegations of the complaint. *See* (Doc. 5 ¶¶ 1-15). Therefore, Defendants fail to show the motion is procedurally defective on this basis.

#### 2. Analysis – Rule 65 Permanent Injunction

"A plaintiff is entitled to a permanent injunction upon a showing of actual success on the merits and lack of an adequate legal remedy." *Church of Solders of Cross of Christ of State of Cal.*

17

*v. City of Riverside*, 886 F. Supp. 721, 724 (C.D. Cal. 1995) (citations omitted) ("*Church of Soldiers*"); *see e.g. id.* at 727-28 (granting plaintiffs' motion for summary judgment as to request for a permanent injunction); *Foothill Church v. Watanabe*, 654 F. Supp. 3d 1054, 1058 (E.D. Cal. 2023) (finding permanent injunction was warranted after entry of summary judgment in movant's favor). "[P]ermanent injunctions may be granted on summary judgment, given the proper record." *S.E.C. v. Murphy*, 626 F.2d 633, 655 (9th Cir. 1980) (citations omitted); *see, e.g., Nat'l Ass'n of Wheat Growers v. Bonta*, 85 F. 4th 1263, 1267 (9th Cir. 2023) (affirming district court's grant of summary judgment and entry of a permanent injunction for plaintiff); *Scholl v. Mnuchin*, 494 F. Supp. 3d 661, 692 (N.D. Cal. 2020) (granting in part and denying in part plaintiffs' motion for summary judgment and entering a permanent injunction). "The critical question … is … whether the … moving party … clearly established the absence of any genuine issue of fact material to the granting of the injunction." *Murphy*, 626 F.2d at 655 (citing *SEC v. Koracorp Industries, Inc.*, 575 F.2d 692, 697-98 (9th Cir. 1978), *cert. denied sub nom.*, *Helfat v. SEC*, 439 U.S. 953 (1978)).

Here, Defendants' contention that Plaintiff's request for injunctive relief "requires a separate motion under Rule 65" is without merit. Consistent with the above-cited authorities, this Court properly may consider a parties' request for a permanent injunction at the summary judgment stage upon a showing of success on the merits, *e.g.*, after it has proven there is an absence of any genuine issue of material fact as to the claims at issue. *See Murphy*, 626 F.2d at 655; *Church of Soldiers*, 886 F. Supp. at 724. Therefore, Plaintiff's request for a permanent injunction is not procedurally defective. However, whether Plaintiff is entitled to that relief depends on whether there are no genuine issues of material fact to preclude summary judgment on its claims.

The undersigned now turns to the merits of Plaintiff's motion.

**B.      No Genuine Dispute of Material Fact Precludes Summary Judgment as to Liability**

1.      Governing Authority

"In 2016, the FDA adopted the 'Deeming Rule' … [which] provided that e-cigarettes and [electronic nicotine delivery systems ("ENDS")], including [flavored disposable vaping ("FDVs")], would be treated as 'tobacco products' under the [Family Smoking Prevention and Tobacco Control

Act of 2009 ("TCA"), 21 U.S.C. § 387 et seq.] and regulated by the FDA." *NJOY LLC v. Imiracle (HK) Ltd.*, 760 F. Supp. 3d 1084, 1105 (S.D. Cal. 2024) (citing 21 C.F.R. § 1143.1; 81 Fed. Reg. 28973 (2016)).

"Since 1959 California has imposed an excise tax on the distribution of cigarettes [and tobacco products]." *Big Sandy Rancheria Enterprises v. Bonta*, 1 F.4th 710, 714 (9th Cir. 2021) (citing *Cal. State Bd. Of Equalization v. Chemehuevi Indian Tribe*, 474 U.S. 9, 10 (1985) (per curiam); Cal. Rev. & Tax. Code §§ 30001-30483). "'Distribution' includes, in pertinent part, '[t]he sale of untaxed cigarettes or tobacco products in th[e] state[.]'" *Id.* (citing Cal. Rev. & Tax. Code § 30008). "Distributors pay the excise tax by purchasing stamps from the state to affix to each package of cigarettes before distribution." *Id.* at 715 (citing Cal. Rev. & Tax. Code §§ 30161, 30163(a)). "To facilitate the collection of taxes, California requires all distributors to obtain two state-issued licenses, one of which must be renewed annually." *Id.* (citing Cal. Rev. & Tax. Code §§ 30140, 22975(a)). "Additionally, California imposes reporting and recordkeeping requirements on cigarette distributors. They must file monthly reports with the California Department of Tax and Fee Administration [("CFTFA")] respecting their distributions both taxable and exempt." *Id.* (citing Cal. Rev. & Tax. Code §§ 30182(a), 30183(a); 18 Ca. Code. Regs. § 4031). "Distributors must also 'keep ... records, receipts, invoices, and other pertinent papers with respect' to their cigarette dealings, which the state may examine." *Id.* (citing Cal. Rev. & Tax. Code §§ 30453, 30454; 18 Cal. Code Regs. §§ 4026(a), 4901). "Similarly, under the [California Cigarette and Tobacco Products Licensing Act of 2003 ("Licensing Act")], distributors must retain copies of transaction records to assist the state's auditing and collection efforts." *Id.* at 715-16 (citing Cal. Bus. & Prof. Code §§ 22978.1, 22978.5).

"In 2003, California enacted the [Licensing Act] after finding '[t]ax revenues [had] declined by hundreds of millions of dollars per year due, in part, to unlawful distributions and untaxed sales of cigarettes [and tobacco products].'" *Cal. v. Azuma Corp.*, No. 2:23-cv-00743-KJM-DB, 2023 WL 5835794, at *2 (E.D. Cal. Sept. 8, 2023) (citing Cal. Bus. & Prof. Code § 22970.1(b)); *see Big Sandy Rancheria*, 1 F.4th at 715. "Under the Licensing Act, manufacturers, importers, wholesalers, distributors and retailers must obtain licenses, … and may not sell or purchase cigarettes [or tobacco

products] from unlicensed entities." *Id.* (citing Cal. Bus. & Prof. Code § 22980.1). "The Licensing Act defines a retailer as 'a person who engages in this state in the sale of cigarettes [or tobacco products] ... directly to the public from a retail location.'" *Id.* (citing Cal. Bus. & Prof. Code § 22971(q)). "A retailer may be a distributor if it sells untaxed cigarettes or places untaxed cigarettes in retail stock for the purpose of selling cigarettes to consumers." *Id.* (citing Cal. Rev. & Tax. Code §§ 30008, 30011)). "A retailer must maintain a state license to engage in the sale of cigarettes [and tobacco products] in California." *Id.* (citing Cal. Bus. & Prof. Code § 22972). "Among other requirements, applicants must pay an annual $265 fee per location to obtain a license." *Id.* (citing Cal. Bus. & Prof. Code § 22973). "Retailers must also retain purchase invoices." *Id.* (citing Cal. Bus. & Prof. Code § 22974).

"Congress passed the Prevent All Cigarette Trafficking Act of 2009 (PACT Act) in 2010 to prevent illicit cigarette [and tobacco products] trafficking and to ensure the collection of federal, state and local excise taxes on cigarettes [and tobacco products]." *Id.* (citation omitted). "Under the PACT Act, persons who sells cigarettes in interstate commerce must file reports 'with the Attorney General of the United States and with the tobacco tax administrators of the State and place into which such shipment is made[.]'" *Id.* (citing 15 U.S.C § 376). "The reports must include certain information such as a memorandum or invoice of the brand and quantities of cigarettes shipped into a State. … Among other provisions, the Act also requires 'delivery sellers' to comply with 'all State, local, tribal, and other laws generally applicable to sales of cigarettes or smokeless tobacco as if the delivery sales occurred entirely within the specific State and place,' including state laws imposing excise taxes and licensing requirements." *Id.* (citing 15 U.S.C. § 376a(a)(3)). "The statute defines delivery sellers as persons who sell cigarettes to 'consumers.'" *Id.* (citing 15 U.S.C. § 375(6)). "Consumer" means "any person that purchases cigarettes or smokeless tobacco[.]" *See* § 375(4).

Under the PACT Act, a State or local government "may bring an action in a United States district court to prevent and restrain violations of this chapter by any person or to obtain any other appropriate relief from any person for violations of this chapter, including civil penalties, money damages, and injunctive or other equitable relief." 15 U.S.C. § 378(c)(1)(A). The PACT Act

20

prohibits failing to comply with California laws applicable to cigarette sales, including e-cigarettes (15 U.S.C. § 376a(a)(3), failing to adhere to shipping package and labeling requirements (§ 376a(b)), failing to meet age verification standards (§§ 376a(b)(4) & (d)), and neglecting to register with the U.S. Attorney General and the State, and to file monthly reports (§§ 376(a)(1) & (2)).  *See NJOY, LLC*, 760 F. Supp. 3d at 1114.

California's Unfair Competition Law ("UCL") prohibits "any unlawful, unfair[,] or fraudulent business act or practice."  *Id.* at 1110 (citing Cal. Bus. & Prof. Code § 17200).  "The statute is 'violated where a defendant's act or practice violates any of the [UCL's] prongs.'"  *Id.* (citing *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012)).  "The unlawful prong of the UCL 'borrows' violations of other laws and treats them as unlawful practices'" and "includes business practices 'forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made.'"  *Id.* (citing *Martinez v. Welk Grp., Inc.*, 907 F. Supp. 2d 1123, 1139 (S.D. Cal. 2012); *Shroyer v. New Cingular Wireless Servs.*, 622 F.3d 1035, 1043–44 (9th Cir. 2010)).  For example, "California Health & Safety Code § 104559.5 prohibits the sale of flavored tobacco products, including FDVs, at retail locations within the state."  *Id.*

### 2.    Analysis – Age Verification Data

Defendants contend that its evidence demonstrating that the 47 underage California customers who placed orders on its website and later failed age verification "show[s] that the alleged sales did not occur and that no statutory violations took place" and "creates a genuine dispute as to whether the transactions cited by Plaintiff actually resulted in the delivery of tobacco products to underage customers."  (Doc. 64 at 9).  Defendants assert that Exhibit A to Defendant Hanna's declaration, a copy of "the detailed comparison of rejected shipments[,]" demonstrates that the 47 subject shipment transactions were rejected and contradicts Exhibit 9 to Ms. Thorburn's declaration on which Plaintiff relies to support its requests for civil monetary penalties under the UCL for these transactions, totaling $513,000.00.  Hanna Decl. ¶ 6.  Defendant Hanna asserts that Exhibit A references specific line numbers and corresponding Bates-stamped pages to substantiate Defendants' assertion that transactions to underage customers were rejected where age verification failed.  *Id.* ¶ 14.

21

Plaintiff argues that Defendants' evidence proffered in Exhibit A to the Hanna declaration should be excluded under Rule 37(c)(1) because Defendants failed to produce that evidence, which is responsive to Plaintiff's discovery requests, until now in support of their opposition to the instant motion for summary judgment. (Doc. 65 at 16). The undersigned agrees.

Under Rule 37(c), "[i]f a party fails to provide information … as required by Rule 26(a) or (e), th[at] party is not allowed to use that information … to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see Merchant v. Corizon Health, Inc.*, 993 F.3d 733, 740 (9th Cir. 2021) ("Rule 37(c)(1) is an 'automatic' sanction that prohibits the use of improperly disclosed evidence."); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) ("Rule 37(c)(1) gives teeth to [Rule 26(a)] requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed."). "The Advisory Committee Notes describe it as a 'self-executing,' 'automatic' sanction to 'provide[ ] a strong inducement for disclosure of material....'" *Yeti by Molly*, 259 F.3d at 1106 (quoting Fed. R. Civ. P. 37 Advisory Committee's note (1993)). "Among the factors that may properly guide a district court in determining whether a violation of a discovery deadline is justified or harmless are: (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence." *Lanard Toys Ltd. v. Novelty, Inc.*, 375 Fed. Appx. 705, 713 (9th Cir. 2010) (citing *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003)).

Courts are given "particularly wide latitude … to issue sanctions under Rule 37(c)(1)." *Yeti by Molly*, 259 F.3d at 1106 (citing *Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de Puerto Rico*, 248 F.3d 29, 34 (1st Cir. 2001)); *see e.g. id.* ("even though Deckers never violated an explicit court order to produce the Vuckovich report and even absent a showing in the record of bad faith or willfulness, exclusion is an appropriate remedy for failing to fulfill the required disclosure requirements of Rule 26(a).").

Here, Defendants cannot introduce and rely upon documents withheld from discovery and only first presented in opposition to Plaintiff's motion for summary judgment. Hanna's declaration

describing Exhibit A as evidence "based on contemporaneous business records maintained in the ordinary course of business, ensuring its accuracy and reliability[,]" Hanna Decl. ¶ 6, adequately demonstrates that the documents and information contained in Exhibit A were in Defendants' possession and control throughout the period of discovery as "contemporaneous" business records. And the documents plainly are responsive to Plaintiff's requests for production such that they should have been produced during discovery. *See* (Doc. 25-1) (Plaintiff's request for production of documents at Nos. 7 [seeking "All DOCUMENTS and COMMUNICATIONS RELATING TO AGE VERIFICATION COMPANIES used by EJUICESTEALS"], 8 [seeking "All DOCUMENTS and COMMUNICATIONS RELATING TO ecommerce platforms, including by way of example SHOPIFY, and ecommerce services providers used by EJUICESTEALS"], 13 [seeking "All DOCUMENTS and COMMUNICATIONS RELATING TO SHOPIFY, including sales reports, inventory reports, customer reports, payment reports, raw data reports, and shipment reports. …"]).

Notwithstanding Defendants filed lengthy objections (Doc. 66) to Plaintiff's reply filings in further support of its motion for summary judgment (Docs. 65, 65-1, 65-4) and advanced extensive challenges regarding certain of Plaintiff's purported new evidence and arguments, Defendants did not address or even acknowledge Plaintiff's arguments (Doc. 65 at 16; Doc. 65-2 at 1-4) that Defendants failed to produce the records at issue and that the records should be disregarded by the Court for purposes of summary judgment. Thus, because Defendants improperly withheld the documents and information of Exhibit A from discovery, and Defendants do not offer any explanation or argument that their failure to disclose the information contained in Exhibit A was substantially justified or harmless, *see* (Docs. 64, 66), that evidence must be disregarded under Rule 37(c). *See Yeti by Molly*, 259 F.3d at 1107 ("Implicit in Rule 37(c)(1) is that the burden is on the party facing sanctions to prove harmlessness."); *R &R Sails, Inc., v. Ins. Co. of Pa.*, 673 F.3d 1240, 1246 (9th Cir. 2012) ("The party facing sanctions bears the burden of proving that its failure to disclose the required information was substantially justified or is harmless.") (citing *Torres v. City of L.A.*, 548 F.3d 1197, 1213 (9th Cir. 2008)).

The undersigned independently has considered whether Defendants' failure to produce the records during discovery could be justified or harmless given that trial has not yet been scheduled.

23

However, the undersigned concludes that the prejudice to Plaintiff that would be caused by the Court's consideration of Defendants' previously-undisclosed evidence would be substantial given that non-expert and expert discovery inevitably would need to be reopened to permit time for Plaintiff to seek to understand and/or refute or rebut the information, causing significant delay in Plaintiff's ability to obtain the injunctive and monetary relief it seeks – in a case that has been pending for over two years already. *E.g., Wong v. Regents of Univ. of Cal.*, 410 F.3d 1052, 1062 (9th Cir. 2005) (affirming exclusion of plaintiff's untimely disclosed expert witness and noting late disclosure was not harmless because excusing the Rule 26 failure would have required alteration of the trial schedule; "[d]isruption to the schedule of the court and other parties in that manner is not harmless.").

Without citation to any evidence of record, Defendants fail to show any genuine dispute of material fact that sales were actually made to the 47 underage California customers at issue and that Defendants are liable under §§ 22958(a)(1) and 22963(a) for those sales. Therefore, viewing the evidence of record in the light most favorable to Defendants, the undersigned finds that Plaintiff is entitled to summary judgment as to Defendants' liability for violation of these statutes.

### 3.    Analysis – Operational Timeline

As noted above, Defendants' reliance on Hanna's deposition testimony that he assumes Ejuicesteals ceased operations in December of 2024, and that there is an "absence of operational records for 2024," without citation to any other record evidence, fails to raise a genuine dispute of fact whether Defendants made unlawful sales of tobacco products to California customers through its website during its operation from 2016 through the end of December 2024. *See* Hanna Depo. at 24. Additionally, Defendants fail either to offer any evidence disputing this fact or to rebut Plaintiff's evidence—Auctane's package shipment data obtained through a non-party subpoena which shows Defendants made shipments via USPS through at least April 2024. *See* Thorburn Decl. at Ex. 7.

### 4.    Analysis – Licensing Allegations

Defendants contend they have provided substantial evidence based on Exhibit B to the Hanna declaration showing Ejuicesteals was issued valid CDTFA licenses to engage in the sale of

24

tobacco products at the relevant locations and time periods in question. (Doc. 64 at 13). Exhibit B reveals that Ejuicesteals was issued CDTFA retailer's licenses at its 10010 Rosedale Highway location in Bakersfield, with effective dates from August 31, 2023 to January 30, 2024, and January 31, 2024 to January 30, 2025, at its 2882 Walnut Ave location in Tustin, with an effective date from January 31, 2022, to January 30, 2023, and a CDTFA's seller's permit at its 12904 Fairhaven Ext. location in North Tustin on January 14, 2019. Hanna Decl. at Ex. B.

Of the four California locations from which Defendants sold and shipped tobacco products during the relevant periods at issue (*see* Doc. 50-1 at 7), Defendants' evidence shows they were issued a valid CDFTA license for only the 10010 Rosedale Highway location from August 31, 2023 to January 30, 2025. This evidence, considered in the light most favorable to Defendants, does not raise a genuine dispute to the fact that Defendants failed to maintain a valid tobacco retailer's license at this location for the period at issue—from January 2019 through August 2023. *Cf.* PSUMF ¶ 19 *and* Dahlen Dec. ¶ 6(d) *with* Hanna Decl. at Ex. B. Accordingly, the undersigned finds that Plaintiff is entitled to judgment as a matter of law on Plaintiff's claims alleging violations of Cal. Rev. & Tax. Code § 30101.7(d)(2), Cal. Bus. & Prof. Code § 22972(a), and of the PACT Act (15. U.S.C. § 376(a)(3)(B)) and Cal. Bus. & Prof. Code § 17200 based thereon. *See* (Doc. 50-1 at 14).

### C.    Plaintiff's Request for Permanent Injunctive Relief

"The standard requirements for equitable relief need not be satisfied when an injunction is sought to prevent the violation of a federal statute which specifically provides for injunctive relief." *Trailer Train Co. v. State Bd. of Equalization*, 697 F.2d 860, 869 (9th Cir. 1983). "Rather, a prima facie showing that a violation of the law has occurred and that 'there is some reasonable likelihood of future violations' is sufficient." *CFTC v. Financial Tree*, 542 F. Supp. 3d 992, 998-99 (E.D. Cal. 2020) (quoting *CFTC v. Hunt*, 591 F.2d 1211, 1220 (7th Cir. 1979)). "Determining the likelihood of future violations may involve consideration of past unlawful conduct." *Id.* at 1004 (citing cases). "In drawing such an inference from past violations, a court should look at the totality of the circumstances, including the egregiousness of the defendant's actions, whether the violations were isolated or recurrent, the degree of scienter involved, the sincerity of the defendant's

25

assurances against future violations, the defendant's recognition of his conduct's wrongfulness, and whether the circumstances indicate the defendant is in a position that makes future violations likely to occur." *Id.* (citing cases).  In addition, "[w]hen the violation has been predicated upon systematic wrongdoing, rather than an isolated occurrence, a court should be more willing to enjoin future conduct." *Id.* (quoting *CFTC v. Driver*, 877 F. Supp. 2d 968, 981 (C.D. Cal. 2012), *aff'd sub nom. CFTC v. Driver*, 585 Fed. Appx. 366 (9th Cir. 2014)).

As noted *supra*, a State, through its attorney general, may bring an action in a U. S. district court seeking injunctive or other equitable relief to prevent and restrain violations of the PACT Act (*see* 15 U.S.C. § 378(c)(1)(A); 18 U.S.C. § 1716E(h)(1)).  And as the undersigned has found no genuine disputes of material fact that Defendants have violated the PACT Act, Plaintiff is entitled to a permanent injunction provided there is "some reasonable likelihood of future violations." *Financial Tree*, 542 F. Supp. 3d at 998-99.

Here, although Defendants ceased operations as of December 2024, the undersigned finds a sufficient basis to conclude there is some reasonable likelihood of future violations of the PACT Act by Defendants.  Importantly, on two occasions separated by approximately one year (June 2019 and June 2020), Plaintiff transmitted to Defendant Hanna detailed warning letters setting forth the governing statutory and regulatory schemes, notifying Defendants of their violations, and threatening to take action if Defendants failed to respond and identify steps they intended to take to remedy the violations. (Docs. 1-2, 1-3).  Nevertheless, as set forth *supra*, despite knowing that it was unlawful to ship and deliver e-cigarettes using USPS and that federal law prohibits sale and delivery of adulterated tobacco products, Defendants continued to make delivery sales in violation of the PACT Act and state laws.  Further, in August 2020, counsel for Plaintiff made various demands for information of counsel for Defendants relating to, among other things, a list of all business entities operated or controlled by Defendant Hanna and licenses held.  (Doc. 1-5).  In September 2020, counsel Defendants communicated to counsel for Plaintiff that Defendants had ceased all sales in California and that they would "inform the Department prior to the commencement of any activity in California." (Doc. 50-20).  Yet, Defendants resumed their sales without providing any notice to Plaintiff.

26

Under the "totality of the[se] circumstances" (*Financial Tree*, 542 F. Supp. 3d at 1004), there is a reasonable likelihood that Defendants may, absent injunctive relief, engage in future violations such that a permanent injunction is warranted.

### D.    Plaintiff's Requests for Civil Monetary Penalties

Plaintiff seeks imposition of civil monetary penalties under § 30101.7(g) of the California Revenue and Taxation Code, § 22963(f) of the California Business and Professions Code, and § 17206 of the California Business and Professions Code.  (Doc. 50-1 at 25-30).  Each of these statutory provisions provides for a range of penalties based on the number of an offender's violations.  In general, Plaintiff has proffered estimated civil penalty amounts that it characterizes as "conservative" based on the number of months of Defendants' operations.  (Doc. 50-1 at 25-30) (citing Thorburn Decl. ¶¶ 59-60 & Ex. 9; Xiomara Decl. ¶ 57 & Ex. 10).

"[O]n a summary judgment record, the district court can impose a civil penalty only after it has determined that no 'genuine issues of material fact exist' and all factual uncertainty is resolved in favor of the non-moving party." *S.E.C. v. Husain*, 70 F.4th 1173, 1181 (9th Cir. 2023) (quoting *S.E.C. v. M & A West, Inc.*, 538 F.3d 1043, 1054 (9th Cir. 2008)); *e.g., S.E.C. v. Barry*, 146 F.4th 1242, 1265 (9th Cir. 2025).  Under *Husain*, where there are no genuine disputes of material fact regarding a defendant's liability, the district court is "entitled to weigh facts in determining the appropriate remedy to impose." *United States v. MyLife.com, Inc.*, 567 F. Supp. 3d 1152, 1171 (C.D. Cal. 2021) (granting summary judgment as to liability on government's Federal Trade Commission Act claims but finding genuine issues of material fact precluded summary judgment on the government's request for civil penalties).

Here, there are no genuine dispute of material fact exists regarding Defendants' liability for violations of the federal and state statutes charged in Plaintiff's claims.  However, the undersigned finds genuine disputes of material fact preclude entry of summary judgment on Plaintiff's request for civil penalties.  All three statutory provisions cited by Plaintiff in support of an award of civil penalties assess a penalty *per violation* of the operative statute.  Based on the summary judgment record, it appears it would be difficult to fix the precise number of "violations" by Defendants from which a civil penalty could be calculated, so it is not surprising Plaintiff has attempted to reach

27

conservative estimates that are tethered not to the number of violations, but rather, to the number of months offending sales were ongoing.  Nevertheless, because the form and factual integrity of such a method of estimation, though laudable, is subject to dispute, the issue of calculation of civil penalties in this case is not amenable to summary judgment.  *See Husain*, 70 F.4th at 1181; *MyLife.com, Inc.*, 567 F. Supp. 3d at 1171; *see also S.E.C. v. Earthly Mineral Solutions, Inc.*, No. 2:07–CV–1057 JCM (LRL), 2011 WL 1103349, at *5 (D. Nev. Mar. 23, 2011) (denying without prejudice SEC's prayer for civil penalties on summary judgment because "the court has not been provided with an exact number of investors who were victims of the violations, the court is unable to calculate an appropriate award of civil penalties at this time.").  *But see S.E.C. v. Punch TV Studios Inc.*, No. 21-cv-07787-AB-AS, 2024 WL 4451747, at *3 (C.D. Cal. Aug. 21, 2024) (granting summary judgment under the Securities Act and awarding civil penalties by multiplying the number of months of demonstrated violations by $1,000).

V.    **Conclusion and Recommendation**

Accordingly, it is HEREBY RECOMMENDED that:

1.  Plaintiff's request for judicial notice (Doc. 51) be GRANTED.

2.  Plaintiff's motion for summary judgment (Doc. 50) be GRANTED IN PART and DENIED IN PART as follows:

    a.  Summary judgment be GRANTED on all causes of action and Plaintiff be awarded a permanent injunction, with Plaintiff to file a proposed order for Defendants' comment and the Court's consideration;

    b.  Summary judgment be DENIED on Plaintiff's request for civil penalties.

3.  The parties be ORDERED to file a joint report addressing their respective positions as to whether the issue of imposition of civil penalties be resolved by bench or jury trial. *See Oman v. Delta Air Lines, Inc.*, 610 F. Supp. 3d 1257, 1278 (N.D. Cal. 2022) (granting summary judgment to plaintiffs on California PAGA claims, "with the amount of penalties to be determined at trial.").

4.  The parties be ORDERED to file a joint report proposing dates of mutual availability for pretrial conference and trial.

These Findings and Recommendations will be submitted to the U.S. District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within 14 days** after being served with a copy of these Findings and Recommendations, any party may file written objections with the Court. Local Rule 304(b). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and **shall not exceed 15 pages** without leave of Court and good cause shown. The Court will not consider exhibits attached to the Objections. To the extent any party wishes to refer to any exhibit(s), that party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the 15-page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C). A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   **April 15, 2026**

_____
UNITED STATES MAGISTRATE JUDGE